## HAYWOOD v. THE STATE.

LARCENY: *Mocking bird subject of.*

A reclaimed and tamed mocking bird is a subject of larceny, and also. of an action of trespass by the owner against one taking it, or of replevin against one detaining it.

APPEAL from *Sebastian* Circuit Court.

Hon. R. B. RUTHERFORD Circuit Judge.

*Duval & Cravens* for appellant.

There is nothing in the statutes of this State to bring mocking birds within the classification of such property as. could be the subject of larceny, and the rule of the common law must prevail.—*2 Blackstone, 391 ; 2 Kent, 348; 2 Bishop, sec. 684; 1 Wharton, p. 675; 48 Ala., 161; 19 Am. Dec., 348; 20 Ib., 775.*

Haywood v. The State.

*C. B. Moore*, Attorney General, for the State.

Anything that is recognized as personal property by law, is the subject of larceny. A tamed mocking bird is the subject of ownership and of taxation under the definition in ·sec. 1, *Act April 28th, 1873; section 1, Act March 31st, 1883.*

*Dogs* have been held to be the subject or larceny.—*Mallaly v. People, 86 N. Y., 365; State v. Brown, 9 Baxter (Tenn.), 53;* also *Peafowls, 8 Gray, Mass., 497.* ·On the general subject, see *2 Russell on Crimes, p. 82; 2 Wharton's Cr. Law, sec. 1755.*

### STATEMENT.

ENGLISH, C. J. Horace Haywood was indicted in the ·circuit court of Sebastian county, Fort Smith district, for larceny. There were three counts in the indictment. The first count charged, in substance, that said Horace Haywood, on the twenty-ninth of April, 1883, at, etc., one reclaimed and tame mocking bird, of the value of twenty-five dollars, and one bird cage of the value of one dollar, of the property, goods and chattels of Ellen Lane, etc., did steal, take and carry away, etc.

The second count was for receiving the mocking bird and ·cage, knowing them to have been stolen.

The third count was for stealing the cage.

The court overrulad a demurrer to the indictment interposed by defendant; he was tried by a jury on the plea of not guilty, found guilty on the first count of the indictment, sentenced to the penitentiary for one year, refused a new trial, took a bill of exceptions and prayed for an appeal, which was granted by one of the judges of this court.

On the trial it was proved that appellant, at some time ·during the night of the twenty-ninth of April, 1883, stole the mocking bird and cage from the front portico of Miss Ellen

(Nellie) Lane, their owner, in Fort Smith, and sold them about one o'clock of the same night for $4.25 to a gentleman at the Southern Hotel of that city, who was about to leave for Van Buren, and who had previously requested appellant to procure him a mocking bird, and he had promised to do so.

Missing her bird and cage next morning, the lady pursued the gentleman to Van Buren, where she found them in his possession, and he surrendered them to her. He offered her twenty-five dollars for the bird, which she declined, saying no money could buy it. It was three years old and a very fine songster.

The gentleman who had purchased the bird of appellant, testified that it was a very fine songster, one of the finest he had ever heard. He had purchased mocking birds before, but never paid over three dollars for a bird. He did not know whether they were fine singers or not, as they died soon after he bought them.

C. H. Boyd, a druggist of Fort Smith, who had dealt in birds, testified that he had sold mocking birds at from five to ten dollars. Fine singers were quoted in the New York market at from fifteen to twenty-five dollars. He knew Miss Lane's bird; it was a fine singer and worth in the Fort Smith market from fifteen to twenty-five dollars. Mocking birds improve in singing qualities up to three years of age. Such as he had sold from five to ten dollars were only a year old. The cage was worth from one dollar to one dollar and a half. It cost about fifty cents a month to keep a mocking bird.

Another witness testified that he had known mocking birds sold in other markets at from ten to twenty-five dollars.

Defendant moved the court to instruct the jury:—

"1. That mocking birds in this State are not the subject of larceny, and the jury must return a verdict of not guilty as to taking of the bird.

"2.    If the jury find that the bird was confined in the cage taken, the bird imparted its value to the cage, and a verdict of not guilty must be returned, both as to the bird and the cage."

These instructions the court refused and charged the jury as follows:—

"That mocking birds were such property as to be the subject of larceny in this State, and that in ascertaining the value of such birds, the criterion of valuation should be the value of fine singing mocking birds in this market."

## OPINION.

Larceny, at common law, is defined to be "the felonious taking and carrying away of the personal goods of another." —*Blackstone*.

By the common law there can be no larceny of animals *ferae naturae*, or wild animals, unreclaimed. When reclaimed they become the subject of this offense, provided they are fit for food, not otherwise.

But the English courts made exceptions to the rule, that reclaimed animals, to be the subject of larceny, must be fit for food. Thus the tamed hawk was held to be the subject of larceny, though unfit for food, because it served to amuse the English gentlemen in their fowling sports. So reclaimed honey bees were made an exception, because, though not fit for food themselves, their honey is.

Under decisions of English and American courts, made upon the common law definition of larceny, MR. BISHOP classes the following animals, when reclaimed, as the subjects of the offense: Pigeons, doves, hares, conies, deer, swans, wild boars, cranes, pheasants, partridges and fish suitable for food, including oysters.

To which might be safely added wild turkeys, geese, ducks, etc., when reclaimed.

LARCENY:
Mocking bird, subject of.

Of those animals of which there can be no larceny, though reclaimed, he puts down the following: Dogs, cats, bears, foxes, apes, monkeys, polecats, ferrets, squirrels, parrots, singing birds, martins and coons.

In the South, squirrels are in common use as food animals, and the hunters of all climates regard bears as good food.

Iowa is credited with the decision ( *Warren v. State, 1 Green 106*) that coons are unfit for food, and therefore by the common law, not the subject of larceny, when reclaimed.

Among the colored people of the South the coon when fat in the fall and winter, is regarded as a luxury, and the Iowa decision would not be regarded by them as sound law or good taste.

On the whole subject, see *2 Bishop on Criminal Law, (6th Ed.) secs. 757, 781 and notes.*

Every species of personal property was not the subject of larceny at common law. For example, dogs were treated as personal property, and on the death of their owner, if not disposed of by will, went to his executor or administrator as such. So the owner of a dog could bring a civil action against one who injured or took the animal.

So choses in action, as bonds, bills, notes, etc., were classed as personal property, and subjects of the action of detenue, etc., but larceny could not be committed of them.

Under the technical rules of the ancient common law, says Mr. Bishop, prevailing still, except as expanded by statutes, larceny was restricted, as to the property of which it could be committed, as well as in some other respects, within limits too narrow to meet the requirements of a more refined and commercial age. Consequently statutes in England and in the United States have greatly enlarged the common law doctrine.—*Ib. sec. 761.*

The provisions of the larceny statute of this State are very broad and comprehensive. The first section defines

the crime thus : "Larceny is the felonious stealing, taking and carrying, riding or driving away the personal property of another." This perhaps is not more comprehensive than the common law definition.

The second section declares that "larceny shall embrace every theft which unlawfully deprives another of his money or other personal property, or those means and muniments by which the right and title to property, real or personal may be ascertained."

The third section makes any bank note, bond, bill, note, receipt, or any instrument of writing whatever, of value to the owner, the subject of larceny.

The fourth section declares that "the taking and removing away any goods or personal chattels of any kind whatever, with intent to steal the same, whether the articles stolen be in the immediate possession of the owner or not, unless it shall appear that the owner has abandoned his claim thereto, shall be deemed larceny."—*Gantt's Digest*, *secs. 1352-7.*

Under similar statutes of New York and Tennessee, it has been decided that dogs are the subject of larceny.—*Mullalley v. People, 86 New York ( Court of Appeals), 365; State v. Brown, 9 Baxter ( Tenn.), 53.* Though in the States where the common law has not been enlarged by statute, the rulings have been otherwise.

In *Mullally v. People*, it was well said by Justice Earle, who delivered the opinion of the court, that "in nearly every household in the land can be found chattels kept for the mere whim and pleasure of its owner ; a source of solace after serious labor, exercising a refining and elevating influence ; and yet they are as much under the protection of the law as chattels purely useful and absolutely essential."

Trespas-
and re-
plevin for
mocking
bird.

The reclaimed mocking bird in question was no doubt personal property. The owner could have brought trespass against the thief, who invaded her portico at night,

and deprived her of the possession of her songster, which she prized above price; and she could have maintained replevin against the person to whom he sold it, had he refused to surrender it to her.

The market value of the bird was, perhaps, more than ten times greater than that of the cage, which was the subject of petit larceny. To hold that larceny might be committed of the cage, but not of the bird, would be neither good law nor common sense.

Affirmed.