| 72 | 23 |
|----|----|
| 83 | 93 |
| 83 | 268 |

| 72 | 23 |
|----|----|
| 90 | 4 |
| f90 | 69 |

</div>

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v. PHILPOT.

Opinion delivered December 5, 1903.

1.  NEGLIGENCE—KILLING OF DOG.—Dogs are personal property, for the negligent killing of which by its train a railway company is liable. (Page 26.)

2.  PLEADING—CONTRIBUTORY NEGLIGENCE.—The defense of contributory negligence is not available unless pleaded.   (Page 26.)

3.  DAMAGES—MARKET VALUE.—Testimony as to the market value in an adjoining state of a bloodhound negligently killed in this state is competent where it is shown that there was no market for such dogs at the place of killing.   (Page 26.)

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

Affirmed.

*Dodge & Johnson,* for appellant.

The evidence shows conclusively that the accident was not due to any negligence on the part of appellant, and the judgment must therefore be reversed.   67 Ark. 514; 66 Ark. 439; 53 Ark. 96; 62 Ark. 182; 43 Ark. 225; 66 Ark. 248; 14 Am. & Eng. R. Cas. (N. S.) 30; 83 Ga. 393.   The same degree of care is not required of trainmen in avoiding the running over of dogs as of other animals.   3 Ell. Rds., § 1190; 40 Fed. 281; 95 Tenn. 413. The court erred in refusing to give the sixth and seventh instructions asked by appellant, and in refusing to instruct the jury upon the law of contributory negligence.   62 Ark. 164 and cases cited. It was error to admit the evidence of witness Miller.   53 Ark. 27.

*W. F. Coleman,* for appellee.

The evidence showed negligence. There was no error in refusing the sixth and seventh instructions of appellant. 38 L. R. A. 134; 46 Ark. 207; 62 Ark. 109; 46 Ark. 207. Said instructions were abstract, and not founded on evidence, and therefore improper. 2 Ark. 133; 23 Ark. 730; 8 Ark. 183; 15 Ark. 491; 21 Ark. 69; 26 Ark. 513; 29 Ark. 151: 42 Ark. 57; 41 Ark. 382. Further, said instructions were not hypothetical in form. 14 Ark. 530; 31 Ark. 699. The testimony of witness Miller upon the value of the dog was properly admitted. 1 Thomps. Trials, § 380; 17 L. R. A. 37. Appellant's objection to Miller's evidence was not sufficiently specific, and was properly overruled. 15 Ark. 491; 14 Ark. 438; 25 Ark. 380; 48 Ark. 177.

Battle, J. C. M. Philpot sued the St. Louis, Iron Mountain & Southern Railway Company for the damages he suffered by reason of the killing of his dog. He alleged in his complaint that the defendant, on the 20th of April, 1900, in the county of Jefferson, in this state, carelessly and negligently ran one of its trains over and killed his bloodhound bitch, of the value of $250, and asked for judgment for that amount. The defendant answered, and denied negligence. Plaintiff recovered judgment for the amount sued for.

Evidence was adduced at the trial tending to prove, substantially, the following facts:

Plaintiff was the owner of a valuable bloodhound bitch. He paid for her, when she was about six months old, $75. In the month of April, 1900, she was killed by a passenger train of the defendant. When she was killed, she was about three and a half or four years old, and was well trained. She was very useful, and had performed feats in tracing and finding escaped prisoners. At one time she caught a man who had escaped from jail, after tracing him for about seven or eight miles and swimming a quarter of a mile; found him in the hollow of a cypress tree in a lake.

On the day she was killed she was attempting to trail a man who had been sent out for that purpose, with directions to take any course he might choose. In the effort to follow him she ran upon the railway track of the defendant, about one hundred

yards in advance of one of its passenger trains, and ran about sixty feet upon the track in the same direction it was moving, when she was struck and killed by it. She was running in a zig-zag direction between the rails, as if following a track. She was intent, and seemed unconscious of the approach of the train, which was running at the rate of twenty-five or thirty miles an hour. No bell was rung, no whistle was sounded, and no effort was made to check the train, although the engineer or fireman could have seen her when she came upon the track.

Dogs are exceedingly alert and active, and trains rarely run over them. Trainmen rely more upon their getting off a track than they do men.

Plaintiff testified that he knew of no market for the sale of bloodhounds in Jefferson county, where the dog was killed, and he resided; that the only persons that he could call to mind who raised bloodhounds for the market resided at Lexington, in the state of Kentucky. They sold their pups when they were ten weeks old, asking for the males $35, and females $40. Never knew of their offering more than one dog that was trained, and he was only two years old, and they wanted $400 for him.

R. P. Miller testified, over the objections of the defendant, as follows: He is a resident of Indianola, in the state of Mississippi. He has been sheriff of the county of Sunflower, in that state, and while he was sheriff he bred and trained bloodhounds "on a small scale, and more for his own use than for sale, and did sell trained bloodhounds in various states during that period." About the 12th day of July, 1897, he sold a "black-and-tan bloodhound bitch pup, named Fanny," about six months old, to plaintiff for $75. Bloodhounds become more valuable as they grow older, until old age "renders them unable to make hard runs." There is no market for bloodhounds in Indianola. He thinks that a bloodhound of the same stock as the dog he sold to plaintiff, "in perfect physical condition, good breeder, nearly four years old, well trained for the trailing of persons, very cold nose, known to have followed by scent such a trail twenty hours old, was worth in April, 1900, from $200 to $300."

The evidence tended to prove this dog of plaintiff, killed by the railway train, was of that description.

The court instructed the jury, but refused to instruct them, at the request of the defendant, as follows:

"6. The court instructs the jury that if plaintiff knew that when his dog was in pursuit of a person by scent, it would become so intent it would not take heed or notice or warning of danger, then it was his duty to have chosen a training trail for his dog away from the dangers of passing trains. So, if you believe from the evidence that the dog was killed because of this neglect of duty, then the plaintff cannot recover, and you will find for the defendant.

"7. The court instructs the jury that a railroad track on which trains are liable to pass at any time is a place of danger, and when plaintiff chose a training trail for the purpose of training said dog along or over a railroad track over which a train was liable to pass at any time, he took upon himself the ordinary risks incident to such perils. The only duty then resting upon the railroad company was to have kept a constant lookout upon its track, and to have used all the ordinary care at its command to prevent striking the dog after it went upon the track. So, then, if you believe from the evidence that the engineer in charge of the train was keeping a constant lookout, and that he did not by the exercise of ordinary care see the dog on or near the track in time to have avoided striking it, then the company is not liable in this action, and you will find for the defendant."

Dogs are personal property, for the negligent killing of which by its train a railway company is liable. *St. Louis Southwestern Ry. Co.* v. *Stanfield,* 63 Ark. 643, 40 S. W. 126, 37 L. R. A. 659.

The instructions refused by the court were inapplicable. There was no evidence that plaintiff selected "a training trail for the purpose of training said dog along or over" the defendant's railway track, or that the man the plaintiff attempted to make his dog trail was on or crossed the railway. The instructions refused imply that he did. Contributory negligence was not pleaded, and that was not an issue in the case. 5 Enc. Plead. & Prac. 10, and cases cited.

The testimony of Miller was admissible for the purpose of enabling the jury to ascertain the value of the dog killed. Such dogs had no market value in Jefferson county, where she was

killed, and her owner resided.  Miller, at one time, bred and trained such dogs for market.  They had no market value in the town of Indianola, where he resided; that is to say, persons living there did not purchase.  But Miller did sell them there to persons residing in other states.  He sold a few in Arkansas.

This testimony was competent to show a market value in Indianola, by reason of the demand for such dogs in other states, and that such dogs would have the same market value, by reason of such demand, in any place where they are kept for sale.  This is shown by the testimony of plaintiff as to the sale of such dogs in Lexington, Kentucky.  The testimony of Miller furnished the jury with information which was reasonably calculated to afford them assistance in arriving at a fair valuation of the dog.  In the absence of better evidence, it was admissible for that purpose.  *Jones* v. *Railway,* 53 Ark. 27, 13 S. W. 416; *Jacksonville, T. & K. W. R. Co.* v. *Peninsular Land, Transp. & Mfg. Co.* (Fla.), 9 South. 661, 17 L. R. A. 33, 60, 61.

The evidence is sufficient to sustain the verdict of the jury in this court.

Judgment affirmed.