KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY.

*v.* WASHINGTON.

Opinion delivered January 21, 1905.

CARRIER—LOSS OF BAGGAGE BY CONNECTING CARRIER—LIABILITY.—In the absence of an express contract, the initial carrier who sells a passenger a through ticket and checks his baggage to its destination is liable for the loss of such baggage by a connecting carrier.

Appeal from Crittenden Circuit Court.

FELIX G. TAYLOR, Judge.

Affirmed.

*C. H. Trimble,* for appellant.

The initial carrier is only liable for the loss on its own line. 23 Fed. 765; 4 Daly, 553; 53 N. Y. 363; 16 Wall. 318; 107 U. S. 106; Ray, Neg. Imp. Duties. 583. 530, 525; 9 Heiskell, 852; 32 Ark. 393; 35 Ark. 410.

*J. T. Coston,* for appellee.

If the receiving carrier collects fare, issues a through ticket, and checks passenger's baggage to his destination, it is liable for loss occuring to the baggage on its own and connecting lines. 4 Elliott, Railroads. § 1658; Schouler, Bailments & Carriers (2d Ed.), § 696; 35 Am. Rep. 128; 38 Am. Rep. 617; 4 Sneed. 203; 42

Am. Rep. 657: 16 Lea, 225; 98 Am. Dec. 567; 48 N. H. 339; 24
Ill. 382; 33 Ill. 382; 24 Barb. 382; 53 Tenn. 145, 208; 63 Ala.
219; 54 N. Y. 500; 19 Wis. 118; 22 Wall. 132.

BATTLE, J. Josie Washington, in her own right and as next
friend of her daughter, Nora Brown, brought this action against
the Kansas City, Fort Scott & Memphis Railroad Company
to recover the value of a trunk and its contents. The defendant
sold to Nora Brown a ticket over its railroad from Deckerville,
Ark., by way of Memphis, and thence by a connecting railroad to
Argenta, in this State, and checked her trunk over the same route
to the same destination. She took passage on its train, and was
transported as indicated by her ticket to Argenta, but her trunk
was lost on the connecting railroad between Memphis and the
place to which it was checked.

The question in the case is, "Is the receiving carrier, in the
absence of an express contract, liable for the loss of baggage by a
connecting carrier, the receiving carrier having sold the passenger
a through ticket, and checked her baggage through to her
destination?" The trial court held the former liable.

Courts differ as to what is sufficient to constitute a contract
by a common carrier to transport property delivered to him to its
destination, when that place is beyond its route. Some courts
hold that "when a carrier receives goods directed to a place
beyond his line, he, in the absence of a stipulation to the contrary,
by the very act of acceptance, engages to deliver them at their
destination, wherever that may be. Other courts hold that the
acceptance of the goods for shipment, so directed, implies nothing
more than an agreement on the part of the carrier to transport
them to the end of their route, and there deliver them to a con-
necting carrier to complete the carriage. The first of these views
is sustained by the English courts and a few of the American
States, and is known as the English doctrine. The other is
adopted by the decided weight of American authorities. As this
court has not adopted either view, we are at liberty to adopt that
which in our opinion is more reasonable.

Mr. Lawson, in his treatise on the Contracts of Common
Carriers, gives the reason for the two views as follows: "In
support of the first doctrine it is argued that a different rule
would work a great inconvenience. A person delivering his

goods to a carrier to be sent to a certain place will generally rely on him alone to perform the service. He cannot be supposed to know the particular portion of the transit which the first carrier controls, much less the other owners or proprietors of the continuous line. He intends to make one contract, but not two or three or half a dozen. When he places his property in the hands of the carrier, he at once loses all control over it. If it is not delivered, how is he to discover at what particular portion of the route it was lost? He would be forced to rely on the statements of the carriers themselves, who would be little likely to aid him in his search. If he did succeed in fixing the responsibility, he might find himself obliged to assert his claim against a party hundreds of miles away, and under circumstances which might well discourage a prudent man, and induce him to bear his loss rather than incur the expense and trouble of pursuing his remedy against so distant a defendant. The first carrier, on the contrary, has facilities for tracing the loss not possessed by the public. He is in constant communication with his associates in the business; he has their receipts for the property delivered to them, and with no inconvenience at all could charge the loss to his negligent agent. In support of the second doctrine it is simply answered that the extraordinary liabilities of common carriers cannot in justice be extended beyond their own routes, where alone they have an opportunity of choosing for themselves their servants, and of guarding the property intrusted to their care." Lawson on Contracts and Carriers, § § 238-242, and cases cited; Hutchinson on Carriers (2d Ed.), § § 145a-149b, and cases cited.

We think the English doctrine more reasonable, and adopt it.

Judgment affirmed.