St. Louis Southwestern Railway Company *v.* Kilberry.

Opinion delivered May 20, 1907.

1. Carrier—liability for damage beyond its line.—In the absence of a stipulation restricting liability, the acceptance of goods by a carrier for transportation implies an undertaking on its part to transport them to the place to which they are consigned, wherever that may be. even beyond its line, and to be responsible for loss or injury occurring on the line of a connecting carrier. (Page 90.)

2. Same—exemption of liability—construction.—A provision in a bill of lading that if the destination of the freight be beyond the line of the contracting carrier then such carrier shall deliver the freight to a contracting carrier at the end of its line, and that the duty and liability of the contracting carrier, as well as of each connecting carrier, shall cease upon delivery to a connecting carrier, and that the contracting carrier shall not be liable for loss or injury occurring beyond its line, does not exempt the contracting carrier from liability for loss or injury which occurred while the freight was being transported under the same contract by a prior connecting carrier. (Page 90.)

3. Same—shipment of live stock.—An instruction which directed the jury to award damages to a shipper upon proof that his live stock were killed in transit was not erroneous as permitting the jury to find for the plaintiffs, even though the killing of the stock might have resulted from inherent vices or natural propensities of the animals, if there was no evidence that the killing of the animals while in transit was caused by such vices or propensities. (Page 92.)

4. Same—live stock—burden of proof. While common carriers are not insurers of animals against injuries arising from their inherent vices or natural propensities, and which could not be prevented by foresight, diligence and care, the burden is upon the carrier to prove that the injury of an animal, received while being transported, was due to such vices or propensities. (Page 92.)·

5. Evidence—market value.—Upon proof that there was no market for cattle injured in transit in the county to which they were being shipped, it was admissible to prove their value in other States. (Page 93.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; affirmed.

*S. H. West* and *Bridges, Wooldridge & Gantt,* for appellant.

1. The second clause of the contract is a clear stipulation against liability on the part of this appellant for loss or damage

occurring on any other line than its own, and such stipulations are upheld by the courts. Hutchinson on Car. (3 Ed.), § § 232-4; 6 Am. & Eng. Enc. of L. 639; 6 Cyc. 480; 16 Am. & Eng. R. Cas. 229. In order to bind the carrier for liability over the entire route, the intention must clearly appear from the contract. It will not be inferred from the absence of limitations or from doubtful expressions. 35 Ark. 402; 6 Am. & Eng. Enc. of L. 615; Hutchinson on Car. 81; 43 Mich. 609; 45 N. Y. 524; 127 N. Y. 438.

2. If the proof shows that there was no market value for the cotton in Arkansas County, it was error to admit testimony of value in Ohio and South Dakota. The rule is, as to measure of damages, the value at point of destination, or, if no market exists there, then the value at the nearest point where there is a market, less the expense of shipment to that point. 63 Ark. 443; 51 S. W. 1054; 73 Ark. 112; Hutchinson on Car. (3 Ed.), § 1360; 1 S. W. 620; 31 S. W. 556; 28 Am. & Eng. R. Cas. 105; Hutchinson on Car. 1362, note 2.

*Tom M. Mehaffy* and *J. E. Williams,* for appellant.

The court's fifth instruction was erroneous, leaving out of consideration, as it does, injuries that may result to live stock by reason of its own vices and inherent propensities. 107 U. S. 102; 123 U. S. 727.

*Taylor & Jones, W. N. Carpenter* and *H. A. Parker,* for appellees.

1. There was no error in the fifth instruction. There was no proof of any injury through the act of God or the public, nor any proof of injury by reason of vices or inherent propensities of the animals. 81 Ark. 469; 56 O. St. 68.

2. It was competent in this case to prove the market value of stock in Ohio, South Dakota, etc. "Where there is no fair market value at the place of destination, then the place of shipment governs." 59 Fed. 489; 144 Fed. 783; 53 Ark. 30; 72 Ark. 23.

3. Both companies are liable, one by reason of its contract, the other because of its tortious act. 67 Ark. 389; *id.* 125; 68 Ark. 171; 6 Cyc. 478.

McCULLOCH, J.   The plaintiffs instituted this action against the St. Louis Southwestern Railway Company and St. Louis, Iron Mountain & Southern Railway Company to recover damages for injuries to a lot of horses and cattle.   The cars containing the stock were shipped from St. Louis, Mo., under a bill of lading issued by the first-named company, commonly called the "Cotton Belt Road," to De Witt, Arkansas, a station on the line of that road.   The Cotton Belt had no railroad out of St. Louis at that time, and the cars of stock were transported by the other company over its lines from St. Louis to Delta, Missouri, and thence by the Cotton Belt over its own line to De Witt, the destination.

The injury to the stock occurred while being transported by the Iron Mountain from St. Louis to Delta, and there is no evidence tending to show that it occurred while on the line of the Cotton Belt road.

The bill of lading contained the following clause:

"Second: It is mutually agreed that if the destination of the aforesaid cars be on the line of the St. Louis Southwestern Railway Company, then the St. Louis Southwestern agrees to deliver same to consignee after payment of the charges and surrender of this contract; but if the destination of such cars be beyond the line of the St. Louis Southwestern Railway Company, then the St. Louis Southwestern Railway Company agrees, and it and each connecting carrier in turn is [are] thereby authorized, to deliver said cars to its connecting carrier for transportation, under the terms, stipulations, limitations and agreements herein contained, and each and every carrier receiving said cars for transportation shall be deemed to adopt the terms and conditions hereof, and assume the like liability, and shall be entitled to all the provisions, exemptions from and limitations of liability and other stipulations governing the measure and adjustment of damages herein contained; it being understood and agreed that the duty and liability of the St. Louis Southwestern Railway Company, and that of every other carrier transporting said cars hereunder, absolutely ceases and terminates upon delivery by it of said cars to its connecting carrier. The St. Louis Southwestern Railway Company, in fixing and guarantying through rates to a point beyond its own line, acts

only as agent for the connecting line or lines, and in no case and under no circumstances shall the St. Louis Southwestern Railway Company be held liable for any injury or loss of the stock transported hereunder, from any cause whatever, happening or accruing beyond its own line, and in the event of injury or loss of said stock only the carrier on whose line the injury or loss actually occurs shall be liable."

The circuit court held that, as De Witt, the destination of the stock, was on the line of the Cotton Belt, the clause just quoted from the bill of lading did not exempt that company from liability for injury to the property which occurred on the other line; and instructed the jury that "by the terms of said contract if De Witt, Arkansas, was a station upon the line of the Cotton Belt Railway, then said railway became and was an insurer of the safe transportation of the plaintiff's property therein mentioned from St. Louis to De Witt, without regard to what lines of railway it might be necessary to use in effecting such transportation."

This court, following the English rule first laid down in *Muschamp* v. *Lancaster & Preston Junction Railway Company*, 8 M. & W. 421, has held that the acceptance by a carrier of goods for transportation, in the absence of an express contract restricting its liability, implies an undertaking on its part to transport them to the place to which they are consigned or directed, wherever that may be, even beyond its own line, and that such carrier is responsible for loss or injury occurring on the line of a connecting carrier. *Kansas City, F. S. & M. Rd. Co.* v. *Washington*, 74 Ark. 9. This view is not in accord with the weight of American authority, but we adopted it as the most reasonable one of the two lines of decisions on the subject. In the absence of a stipulation restricting liability, not only the initial carrier, but also any other carrier on whose line loss or injury to the property occurs, is responsible to the owner therefor. 1 Hutchinson on Carrier, § 236. Now, the question in the case is whether the contract expressly exempts the Cotton Belt road, the company which issued the bill of lading or contract of affreightment, from liability on account of injury to stock while on the Iron Mountain road.

The contract starts out with the recital that "the first party

[the railway company] will transport for the second party the live stock described below, and the parties in charge thereof, as hereinafter provided, viz.: On cars said to contain [mentioning the property] from St. Louis station to De Witt, Arkansas, station, consigned to F. R. Kilberry." This is clearly an undertaking on the part of the carrier to transport the property to the destination named in the contract, subject only to such express restrictions as are found in subsequent portions of the contract. The second clause of the contract, which has already been quoted, does not, under the circumstances of this case, restrict the liability in this respect. On the contrary, that clause expressly provides that "if the destination of the aforesaid cars be on the line of the St. Louis Southwestern Railway Company, then the St. Louis Southwestern Railway Company agrees to deliver same to consignee." That clause further provides that, if the destination of the cars should be beyond the line of that company's road, it should deliver to a connecting carrier at the end of its line; that the duty and liability of that company, as well as that of each connecting carrier, should cease upon delivery to a connecting carrier, and that each succeeding carrier should be liable only for the loss or injury occurring on its own line. But the destination of the consignment was not beyond the line of the contracting carrier. It was on that line, and the clause quoted has no application to this shipment. The language employed in the contract is that of the carrier, and must be construed most strongly against itself; all doubt as to the meaning of the terms being resolved in favor of the shipper. This form of contract was doubtless one in general use, but this particular clause had no application because this shipment did not fall within its terms. It was obviously a misfit, so far as this consignment is concerned. We think the trial court correctly construed the contract, and properly instructed the jury with reference to it.

The trial resulted in a verdict in favor of the plaintiff against each of two defendant railway companies, and both appealed.

The evidence is sufficient to sustain a finding against each company, and the question of the liability of each was submitted upon correct instructions, so the verdict will not be disturbed.

The giving of the following instruction is assigned as error:

"5. The burden is on the plaintiffs to show, by a preponderance of the evidence, the fact that their horses and cattle were injured, the nature and extent of such injuries, and that they were damaged thereby. After these facts are shown by such preponderance of the evidence, it would then be the duty of the jury to award to the plaintiffs such a sum as would compensate them for the damages so by them sustained, the amount of such damages or compensation to be ascertained and fixed according to instructions hereinafter given."

The court also gave the following instruction concerning the liability of the Iron Mountain company:

"9. Unless you believe from the evidence that the stock in controversy passed over the road of the St. Louis, Iron Mountain & Southern Railway Company, and were in charge of said road at the time of the injuries complained of in De Soto, your verdict should be for said defendant. And, in passing upon the question as to whether or not the injury happened upon said defendant's road, you are not at liberty to presume that the road or yards at De Soto belonged to the said defendant, but such fact must appear from the evidence."

It is contended that the fifth instruction was erroneous because it permitted the jury to find for the plaintiff, even though the injury to the stock might have resulted from inherent vices or natural propensities of the animals. It seems to be settled that a somewhat different rule prevails with reference to the liability of carriers between shipments of goods, inanimate things, and shipments of live stock. "Liability of carriers of animals, it is said, is essentially different from that of the carrier of merchandise or of inanimate property. While common carriers are insurers of inanimate goods against all loss and damage except such as is inevitable or caused by public enemies, they are not insurers of animals against injuries arising from their nature and propensities, and which could not be prevented by foresight, diligence and care." 1 Hutchinson on Car. § 343. It was not intended to ignore or change this rule in the recent case of *St. Louis & S. F. Rd. Co.* v. *Wells,* 81 Ark. 469. There was no evidence in that case that the killing of the animal while in transit was caused by any inherent vice or

natural propensity of the stock being transported, and that was not a feature of the case. The instruction complained of here omitted any mention of such a state of facts, and it was unnecessary to do so, as the burden of proof was not upon the plaintiff to negative the fact that the injury to the stock resulted from inherent vices or natural propensities of the animals. That was matter of defense to be established by the carrier, as it was the insurer of the safety of the consignment except as against injuries resulting from such vices and propensities or from acts of God or the public enemy. *St. Louis & S. F. Rd. Co.* v. *Wells, supra.*

Appellant contends that the court erred in permitting the plaintiff to prove the market value in Ohio, South Dakota and West Virginia of cattle of the kind owned by plaintiff which were injured. The cattle were of fine registered breeds which plaintiff had bought in Ohio and shipped to South Dakota, thence to Arkansas. There was proof tending to show that there was no market in Arkansas County for such cattle, and witnesses were allowed to testify, over the objection of the defendants, as to the market value in the States named. There was no evidence introduced by either party of a nearer market for such cattle, except that the defendant introduced some proof tending to show that there was a market value in Arkansas County, which was disputed. The court in *Jones* v. *Railway,* 53 Ark. 27, said: "To establish value, as to establish other facts, the law requires the best evidence that can be had. In most cases this rule would require proof of value in the market at the time and place of the injury; for if the property was held for sale, this shows the extent of the loss in not being able to sell it; and if it was held for use, it shows what it would cost to replace it. But, while the principle which exacts the best evidence is general, what constitutes the best evidence varies with the circumstances of the different cases." We think the testimony was, under the circumstances, competent for the jury to consider, in the absence of other evidence of the market value. *Jones* v. *Railway, supra; St. Louis, I. M. & S. Ry. Co.* v. *Philpot,* 72 Ark. 23.

The case was fairly submitted to the jury upon competent evidence, which was sufficient to support the verdict, and upon

correct instructions, and we find nothing sufficient to justify us in disturbing the verdict.

Affirmed.