STATE *v.* SOWARD.

Opinion delivered June 24, 1907.

MALICIOUS MISCHIEF—KILLING OF DOG.—Under Kirby's Digest, § 1821, providing "that larceny is the felonious stealing, taking and conveying, riding and driving away the personal property of another," a dog may be the subject of larceny, and therefore of malicious mischief, under Kirby's Digest, § 1893, denouncing a punishment against any person who shall maliciously kill, maim or wound an animal "which it is made larceny to steal."

Appeal from Garland Circuit Court; *Alexander M. Duffie, Judge*; reversed.

*Wm. F. Kirby,* Attorney General, for appellant; *C. Floyd Huff,* of counsel.

The affidavit charged an offense under § 1893 of Kirby's Digest. A dog is the subject of larceny. 41 Ark. 479; 63 *Id.* 643. Kirby's Digest, § § 1821-5; 48 Ark. 56-59; 62 Ark. 365; 19 *Id.* 17. For interpretation of statutes as to malicious mischief referring to "animals," etc., see 19 Am. & Eng. Enc. of Law (2 Ed.), p. 636 and cases cited, and note to 40 L. R. A. p. 503.

BATTLE, J. The prosecuting attorney of the Seventh Judicial Circuit of the State of Arkansas filed an information before a justice of the peace of Garland County, in this State, in which he accused Guy Soward of unlawfully, wilfully, maliciously and wantonly killing a dog, the property of C. Floyd Huff, on the 25th day of June, 1905, in such county, against the peace and dignity of the State of Arkansas. The defendant was tried and convicted before a justice of the peace, and appealed to the circuit court, where he filed a demurrer to the information, which the court sustained, and the State appealed.

The information was based upon section 1893 of Kirby's Digest, which is as follows: "If any person shall wilfully, maliciously or wantonly, by any means whatsoever, kill, maim or wound any animal of another, with or without malice toward the owner of the animal, *which it is made larceny to steal,* he shall on conviction be punished by a fine of not less than twenty nor more than one hundred dollars, or by imprisonment in the county jail for a period of not less than ten or more than sixty days, or by both such fine and imprisonment," etc.

The question is, is the dog subject to larceny?

The statutes of this State provide: "Larceny is the felonious stealing, taking and carrying, riding or driving away the personal property of another. Larceny shall embrace every theft which unlawfully deprives another of his money or other personal property, or those means and muniments by which the right and title to property, real or personal, may be ascertained. The felonious taking and carrying away from the possession, actual or constructive, or custody of another any bank note, bond, bill, note, receipt or any instrument of writing whatever, although not herein specified or named, of value to the owner, shall be deemed larceny." Kirby's Digest, § § 1821-1823.

The statutes increase the subjects of larceny and change its meaning. At common law, larceny is defined to be "the felonious taking and carrying away of the personal goods of another." Yet muniments of title, choses in action, as bonds, bills, notes, etc., were not subject to larceny within this definition. 1 Bishop's New Criminal Law, § 578; 2 *Ib.* § 770.

Under statutes upon larceny similar to the statutes of this State, dogs have been held to be the subject of larceny. *Mullaly v. People,* 86 N. Y. 365; *State v. Brown,* 9 Baxter (Tenn.) 53.

In *Mullaly* v. *People,* 86 N. Y. 366, Mr. Justice Earl, delivering the opinion of the court, said: "At common law the crime of larceny could not be committed by feloniously taking and carrying away a dog. * * * And yet dogs were so far regarded as property that an action of trover could be brought for their conversion, and they would pass as assets to the executor or administrator of a deceased owner.

"The reason generally assigned by common-law writers for this rule as to stealing dogs is the baseness of their nature and the fact that they were kept for the mere whim and pleasure of their owners. When we call to mind the small spaniel that saved the life of William of Orange and thus probably changed the current of modern history; and the faithful St. Bernards which, after a storm has swept over the crests and sides of the Alps, start out in search of lost travelers, the claim that the nature of a dog is essentially base, and that he should be left a prey to every vagabond who chooses to steal him, will not now receive ready assent.

"In nearly every household in the land can be found chattels kept for the mere whim of the owner, a source of solace after serious labor, exercising a refining and elevating influence, and yet they are as much under the protection of the laws as chattels purely useful and absolutely essential.

"This common-law rule was extremely technical, and can scarcely be said to have had a sound basis to rest on. While it was not larceny to steal a dog, it was larceny to steal the skin of a dead dog, and to steal any animals of less account than dogs. * * *

" * * * One reason hinted by Lord Coke for holding that it was not larceny to steal dogs was that it was not fit

that 'a person should die for them;' and yet those ancient law-givers thought it not unfit that a person should die for stealing a tame hawk or falcon.

"The artificial reasoning upon which these laws were based are wholly inapplicable to modern society. *Tempora mutantur et leges mutantur in illis.* Large amounts of money are now invested in dogs, and they are largely the subject of trade and traffic. In many ways they are put in useful service, and so far as pertains to their ownership as personal property, they possess all the attributes of other personal property."

Judge Blackstone said: "But of all valuable domestic animals, as horses and other beasts of draught, and of all animals *domitae naturae,* which serve for food, as meat or other cattle, swine, poultry, and the like, and of their fruit or produce, taken from them while living as milk or wool, larceny may be committed; and also of the flesh of such as are either *domitae* or *ferae naturae,* when killed. . As to those animals which do not serve for food, and which, therefore, the law holds to have no intrinsic value, as dogs of all sorts, and other creatures kept for whim and pleasure though a man may have a base property therein, and maintain a civil action for the loss of them, yet they are not of such estimation as that the crime of stealing them amounts to larceny." 4 Blackstone's Com. 236.

The reasons why dogs were not subjects of larceny at common law do not prevail in this State; and the common law upon that subject is not in force. In *Haywood* v. *State,* 41 Ark. 479, the defendant was indicted for stealing a mocking bird. The court held that it, though it did not serve for food, and is kept for pleasure, and is chiefly prized as a songster, was, under the statutes of this State, a subject of larceny. The reason assigned was as follows: "The reclaimed mocking bird in question was no doubt personal property. The owner could have brought trespass against the thief, who invaded her portico at night, and deprived her of the possession of her songster which she prized above price; and she could have maintained replevin against the person to whom he sold it, had he refused to surrender it to her."

So dogs have been repeatedly held by this court to be personal property, for the negligent killing of which by a train

a railroad company is liable. *St. Louis S. W. R. Co.* v. *Stan-field*, 63 Ark. 643; *St. Louis, I. M. & Sou. R. Co.* v. *Philpot*, 72 Ark. 23. They are possessed of many elements of value and utility to the human race—the most valuable, "ranking among the noblest representatives of the animal kingdom, and being justly esteemed for their intelligence, sagacity, fidelity, watchfulness, affection and above all for their natural companionship with man," being true and faithful to their masters under all circumstances.

We conclude that dogs are subjects of larceny.

The judgment of the circuit court is reversed, and the cause is remanded with direction to the court to overrule the demurrer to the information and for other proceedings.