ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* RANDLE.

Opinion delivered January 20, 1908.

1. APPEAL—HARMLESS ERROR—WRONG THEORY.—Where a case was tried upon a wrong theory in the court below, it will not be reversed upon appeal if undisputed evidence shows that the appellee was entitled to recover. (Page 129.)

2. CARRIER—LIABILITY FOR DAMAGE BEYOND LINE.—In the absence of any stipulation restricting liability, a carrier which accepts goods for transportation beyond its line becomes liable for injuries occurring upon the line of a connecting carrier. (Page 129.)

3. SAME—LIMITATION OF LIABILITY—PLEADING AND PROOF.—A carrier, sued under its contract for a joint shipment of livestock, if it relies upon a provision limiting its liability to injuries occuring on its own line, must both plead and prove such provision. (Page 129.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

*M. Rountree,* for appellee.

There was sufficient evidence to sustain the verdict, and this court will not disturb it. 23 Ark. 131; 73 Ark. 337; 75 Ark. 111; 74 Ark. 479; 67 Ark. 399; 76 Ark. 115.

HILL, C. J. On the 7th of October, 1905, Randle went to the agent of the appellant railroad company at Gurdon, Ark., and offered to ship two jacks to Herrington, I. T. The route would be from Gurdon to Hope over the line of the appellant railroad, and from Hope to Herrington over the line of the St. Louis & San Francisco Railway Company. He and the agent discussed the different rates, and agreed upon a through rate from Gurdon to Herrington at $28.40, which Randle paid, and took a bill of lading, put his jacks into the car, and went with them on the journey.

When he got to Hope, the Frisco Railroad refused to receive the care on the through rate, on the ground that the amount named was $16.80 less than the proper rate from Gurdon to Herrington. Quite a dispute arose between Randle and the Frisco agent over this, during which time he missed the

first train which would have carried his car toward its destination.

After communicating with the agent at Gurdon, it was finally made plain to Randle that the agent at Gurdon had made a mistake as to the amount of the rate. This occurred through the agent taking the rate on horses, when the rate on jacks was higher. Randle paid the additional sum which was required by the Frisco agent, and at 5 o'clock on the 8th of October the appellant company turned the car over to the Frisco company, and it was placed on a transfer track which belonged to the appellant company, but which was operated and controlled entirely by the Arkansas & Louisiana Railroad Company, it being used by the said railroad company (a separate corporation) to make transfers from its tracks to the tracks of the Frisco and Iron Mountan lines. The evidence is undisputed that the Iron Mountain had no control over this track, although it owned it.

The Iron Mountain had nothing to do with the car after it was turned over to the Frisco. During that night, owing to the car being shifted backwards and forth, the jacks were injured, and were delivered to their destination at Herrington in an injured condition; and on account of these injuries Randle's sale of the jacks was frustrated.

Randle brought this suit for the injuries received by the jacks while upon the transfer track at Hope. The complaint alleged a contract with the appellant railroad to deliver the stock in good condition at Herrington, I. T., and a breach thereof, and stated that said contract was evidenced by a bill of lading which was in possession of the defendant railroad company.

The railroad company in its answer admitted the contract, and alleged that it was attached to the answer as Exhibit A; but it was not attached, and was not introduced in evidence. There is no conflict in the testimony whatsoever as to the contract that was made—a through contract from Gurdon to Herrington. The dispute was over the amount; and that was due to the mistake of the agent at Gurdon, which was finally conceded by Randle and the amount demanded by the railroad company paid by him.

The case was tried in the lower court upon the question of whether the injury to the jacks occurred while they were in the possession, or under the control, of the appellant railroad company. The jury found that they were, and assessed damages against it for $100. The railroad company has appealed.

No question is made as to the injury, or the amount of damages therefor.

There is no testimony to sustain a personal judgment against the appellant railroad company for an injury occurring on its property, the control of which was exercised by another company. *St. Louis, I. M. & S. Ry. Co.* v. *Chappell,* 83 Ark. 94. But the court can not reverse the case because it was tried upon a wrong theory, where the undisputed evidence shows that the plaintiff was entitled to recover. The contract was one for the delivery of the jacks in good condition at Herrington, I. T., and included transportation over the line of a connecting carrier as well as over its own line. This made the initial carrier responsible for injuries occurring on a connecting line as well as on its own line. From the conflict of authority on this subject, this court recently adopted this view, which seemed to it soundest in principle. *Kansas City, F. S. & M. Rd. Co.* v. *Washington,* 74 Ark. 9; *St. Louis S. W. Ry. Co.* v. *Kilberry,* 83 Ark. 87.

The court is aware that the contract in bills of lading frequently contains stipulations changing this rule and providing that when the carrier delivers the freight to a connecting carrier its liability terminates. But, as shown in the foregoing statement of the facts, the contract in this case was not introduced in evidence. If there was such a limitation in the contract, the railroad company should have pleaded it as a defense, and introduced the contract in evidence to sustain it. But it did neither. The pleadings and the evidence of appellant's agent and of appellee all show that it was a contract to deliver at a point beyond appellant's line.

The court is always reluctant to determine a case on a different theory from the one upon which it was tried; but where the right conclusion is reached, although through an erroneous route, it is the duty of the court to affirm, and it is so ordered.       Affirmed.