ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* CUMBIE.

Opinion delivered November 27, 1911.

1. CARRIERS—LIABILITY FOR DAMAGE TO FREIGHT.—Where, by a carrier's negligence, a shipment of peaches was damaged in transit, the carrier was liable for the difference between the value of the peaches at their destination if they had arrived in sound condition and their value in their damaged condition; and where the carrier sold the damaged peaches for the consignee's benefit upon his refusal to receive them, his damage was that amount less than the market value of the shipment plus the expenses reasonably incurred in selling the fruit.   (Page 177.)

2. SAME—CONTRACT LIMITING LIABILITY.—Where a carrier seeks to avail itself of a contract limiting its liability as a defense in an action for damage to freight in transportation, it should set up such limitation in its answer.   (Page 177.)

3. SAME—SUFFICIENCY OF NOTICE OF CLAIM OF DAMAGES.—A stipulation in a bill of lading that notice of claims for damages should be reported to the delivering carrier in writing is complied with where the consignee's agent refused to accept the goods on account of their damaged condition and gave the delivering carrier's agent a copy of a telegram advising the consignor to that effect.   (Page 177.)

4. PARTIES—RIGHT OF AGENT TO SUE.—Where a contract of shipment was made with plaintiff as agent for several shippers, he is entitled to bring suit thereon for the benefit of his principals; and the error of permitting others to join with him was not prejudicial.   (Page 177.)

Appeal from Sebastian Circuit Court, Greenwood District; *Daniel Hon.* Judge;  affirmed.

### STATEMENT BY THE COURT.

This suit was instituted by the plaintiff, R. C. Cumbie, and others, against the defendant, the St. Louis, Iron Mountain &

Southern Railway Company, to recover damages to a shipment of peaches.

It was alleged that R. C. Cumbie was the duly selected, appointed and acting agent for all of the plaintiffs, and as such made and entered into the contract for such shipment for their use and benefit. That he delivered to the defendant, at Greenwood, Arkansas, four hundred and ninety six-basket crates of peaches, and that the defendant, by its contract and bill of lading, agreed to carry same to the city of Cleveland, Ohio, and deliver them to J. B. Payne. That said peaches were loaded by defendant into refrigerator car No. 9003, and should and would have arrived at the point of destination on July 22, 1909, at which time in sound and marketable condition they were worth the sum of two dollars and fifty cents per crate. That they were greatly damaged on account of the unnecessary and unreasonable delay in their transportation and by the negligence of the defendant in failing to keep the car properly iced so as to preserve them sound and firm; that they became overheated, wilted, shrunk and decayed, and were utterly worthless on arrival at destination. Prayed damages in the sum of twelve hundred and twenty-five dollars.

A general demurrer and also a special demurrer were interposed, setting up the misjoinder of causes of action and want of capacity of the plaintiff to maintain the suit, and also failure of the plaintiff to allege the written notice of its claim for damages to the carrier by the consignee, within thirty-six hours after the arrival of the car at the point of destination, it being claimed that same was a condition precedent to any recovery. The bill of lading was attached as an exhibit to the complaint, and provided: "Claims for damages must be reported by consignee in writing to the delivering line within thirty-six hours after the consignee has been notified of the arrival of the freight at the place of delivery. If such notice is not there given, neither this company nor any of the connecting or intermediate carriers shall be liable."

The court overruled the demurrer, and the railroad company answered, denying each and every allegation of the complaint. The suits first related to a great number of cars, but before the case was given to the jury was limited to a recovery for said car 9003.

The testimony tended to show that R. C. Cumbie had charge of the loading of the cars for the fruit growers around Greenwood for the year 1907, and shipped said carload of peaches, making the contract therefor in his own name. That they were consigned to J. B. Payne, who was working for the Farmers' Union in 1907 and had charge of the shipment of peaches for the fruit growers association of Greenwood; that A. E. Clark was at Cleveland, Ohio, acting as his representative. That the said peaches were properly packed and loaded into said car and were shipped from Greenwood, Arkansas, on July 18, and would have arrived in the usual course of carriage on July 22, but did not reach Cleveland until July 25. That they were opened on arrival at the Pennsylvania Lines track, and examined by Clark, the agent of consignee, in the presence of Mr. Blair, the agent of the delivering line, and found to be in bad condition, heating, decaying and rotting, on account of the negligence of the carrier in the delay and failure to keep the car properly iced in transit. The fair market value of the peaches at the time, if they had arrived in good and sound condition, was two dollars per crate, and there were four hundred and ninety crates. Clark had one or two prospective buyers to examine them, but could not make a sale, and declined, because of their damaged condition, to accept them at all, and so notified the railroad company, which kept and sold the carload of peaches, realizing one hundred and fifty dollars therefor. Said Clark testified that he refused to accept the peaches at all because they were damaged in their total value, and wired Payne, the consignee, to that effect, and gave to Blair, the agent of the delivering line, a copy of the message sent to Payne.

The court instructed the jury, including defendant's instruction No. 2, as follows:

"2. The court instructs the jury that the consignee can not refuse to accept a shipment on account of its damaged condition; that the law requires the consignee to accept freight tendered at destination, although it may be in badly damaged condition, and then it becomes the duty of the consignee or owner to dispose of the goods to the best possible advantage, and the railroad company, if liable at all, would only be liable for the difference between the market value of the goods if they

had been delivered in a marketable condition and the market value in their damaged condition."

The record recites:   "Counsel for defendant argued to the jury, commenting upon instruction No. 2, offered by defendant and given by the court, that consignee had no right, under the law, to refuse to accept the peaches in their damaged condition, but that it was the duty of the consignee to accept the peaches in their damaged condition and dispose of them to the best possible advantage; and if the railway company was liable at all, it would be only for the difference between the market value of the peaches, if they had been delivered in good condition, and the market value of the peaches in the condition in which they arrived."

The court interrupted counsel while making this argument to the jury, and in the presence and hearing of the jury stated to counsel that he was placing an improper construction upon said instruction No. 2;  that the consignee's refusal to accept the peaches in their damaged condition would not be a bar to the plaintiff's right to recover;  that the plaintiffs would have the right to recover, regardless of the fact that he had refused to accept the peaches in their damaged condition.

The defendant saved its exceptions to these remarks of the court.

The jury returned a verdict against the defendant for five hundred and fifty dollars, and from the judgment rendered thereon it appealed.

*W. E. Hemingway, Lovick P. Miles* and *Thomas B. Pryor,* for appellant.

1.   The court's declaration at the time he interrupted counsel's argument and comments on instruction 2 was in effect an abrogation of the instruction, which is a correct statement of the law, and was tantamount to an instruction to find for the plaintiff.   This court has held that "a common carrier is liable in damages for negligent delay in the transportation of property," but that "the owner can not on account of unreasonable delay in the delivery refuse to receive the goods and sue as for a conversion."   99 Ark. 568; 31; 44 Ark. 439;  104 S. W. 1072;  53 Ark. 286;  4 Elliott on Railroads, § 1737;  6 Cyc. 529.

2. The demurrer should have been sustained. The complaint does not allege a joint ownership or community of interest in the shipment, and, although the plaintiff was acting as the agent for the parties named, their causes of action were separate and distinct, and the damages, if any, inured to them separately. 14 Ia. 576; 53 Kan. 78; 23 Cyc. 402; 30 Cyc. 114; *Id.,* 105, 106. The eighth paragraph of the demurrer was directed to the failure to give the notice required by the bill of lading as to any claim for damages. The giving of such notice, being a condition precedent to the right to recover, should have been alleged in the complaint. Kirby's Digest, § 6133; 82 Ark. 357; 90 Ark. 308; 4 Enc. Pl. & Pr. 627; *Id.* 640. Failure to allege performance of a condition precedent can be reached by demurrer. 4 Enc. Pl. & Pr. 661; 33 Ark. 595.

*Robert A. Rowe, C. A. Starbird* and *Rowe & Rowe,* for appellant.

1. Appellant's abstract does not show how the ruling of the court came up on counsel's argument with reference to instruction 2, and it does not state correctly what the court said, the facts being that appellee objected to counsel's statements, and the court in sustaining the objection remarked in substance that the refusal to accept the peaches would not of itself bar appellee from recovering. However, the court would have been right in saying that the refusal to accept the peaches in their damaged condition was not a bar to recovery, and that appellee would have a right to recover regardless of that fact. The court's statement was not equivalent to a peremptory instruction, and, considering the instructions and the evidence, it could not have been prejudicial, because, under the undisputed testimony, the verdict could not have been other than in favor of appellee. Authorities cited by appellant are not applicable to the facts in this case, they being suits for conversion, for delay in transportation or delay in delivery, whereas this suit is for damages occasioned by the failure of the carrier to ice and keep iced the peaches in transit. See, however, as supporting appellee's contention, 4 Elliott on Railroads, § § 1737, 1734.

2. Appellant, having filed an answer to the complaint, waived the objections raised by demurrer. 65 Ark. 495. As

to appellee's right to sue, he is a party plaintiff and would have the right to maintain the action without joining any of the others as parties plaintiff. 58 Ark. 487; 54 Ark. 525; 37 Ark. 42; 36 Ark. 191. A motion to strike their names from the complaint would have been the proper procedure, but the objection in that form was waived by filing the answer. 35 Ark. 363; 36 Ark. 205. See also Kirby's Digest, § § 6005, 6008, 6002; 6081; 2 Cur. Law, § 5, p. 1096; 4 *Id.* § 6, p. 896-897; 34 Ark. 598; 32 Ark. 495; 39 Ark. 158; 27 Ark. 581-82; 64 Ark. 132; 8 Current Law § 6, p. 1245; 119 S. W. (Ark.) 642, 90 Ark. 529.

3. The provision in the bill of lading requiring notice of claim for damages within thirty-six hours is matter of defense which appellant should have pleaded, and the burden of pleading and proving it was on appellant. 14 Am. & Eng. Ann. Cas. 414; 191 N. Y. 101; 114 N. Y. App. Div. 821; 108 S. W. 1032; 113 S. W. 6; 106 N. Y. S. 702; 69 Ark. 256, 63 S. W. 62.

Under the act approved April 30, 1907, the provision requiring such notice to be given within thirty-six hours is not only unreasonable, but it is void. Acts 1907, pp. 557-8 § § 1, 2, 3, and 4; 90 Ark. 312; 165 Ill. 78, 45 N. E. 1003; 41 Ill. App. 608; 67 Ark. 407, 55 S. W. 215; 54 Miss. 566; 180 U. S. 49; 67 Tex. 166; 70 Tex. 611; 78 Tex. 372; 1 Tex. Civ. App. 402; *Id.* 621; 1 Hutchinson on Carriers, § 443 and authorities cited; 59 Fed. 879; 132 Fed. 52; 44 Ala. 101; 108 Ala. 517; 6 Ind. App. 183.

KIRBY, J., (after stating the facts). It is contended here, first, that the court erred in its remark to the jury relative to the proper construction to be placed upon said instruction No. 2 and in stating that the consignee's refusal to accept the peaches in their damaged condition would not be a bar to plaintiff's right to recover, etc.

It is true, our court has said: "A common carrier is liable in damages for a negligent delay in the transportation of property, but the owner can not, on account of unreasonable delay in the delivery, refuse to receive the goods and sue as for a conversion." *Chicago, R. I. & P. Ry. Co.* v. *Neusch,* 99 Ark. 568; *Chicago, R. I. & P. Ry. Co.* v. *Pfeifer,* 90 Ark. 524.

This suit, however, was not for a conversion of the car of peaches, but for damages for the destruction of same, in effect,

by delay and failure to ice in transit, causing them to heat and rot and rendering them worthless, according to plaintiff's contention, and the court correctly declared the law as to the measure of damages.

It is also true that the peaches were not entirely without value, as the consignee's agent concluded they were in refusing to accept them when tendered by the delivering line, and that they in fact were sold by said carrier for one hundred and fifty dollars.

But, even if the refusal to accept had been wrongful, the carrier could not have abandoned the shipment, or converted it to its own use without liability therefor. *Chicago, R. I. & P. Ry. Co.* v. *Pfeifer*, 90 Ark. 524.

Recognizing its obligation, it sold the damaged shipment, realizing therefor one hundred and fifty dollars, and there is no proof indicating that said amount was not the value. The carrier was then bound to the payment of the difference of the value of the peaches at their point of destination, if they had arrived in a sound and marketable condition, and their value as they did reach the market in the damaged condition, and if plaintiff had been able to establish his contention that they were utterly worthless on arrival because of the carrier's negligence, he would, of course, have recovered the entire market value. The peaches having been shown to be worth one hundred and fifty dollars, his damages were necessarily that amount less than the market value of the shipment at the place of destination and any expense the carrier reasonably incurred in the sale and disposition of the fruit, the one hundred and fifty dollars belonging to him the same as if he had sold the shipment therefor    Because plaintiff failed to establish his contention that the shipment of peaches was damaged in its full value, as his agent concluded when he refused to accept them, it does not follow that he could not, on that account, recover the damage he did prove, and the construction placed upon said instruction No. 2 by the attorney in his argument to the jury that under it they could not find for the plaintiff at all, if he refused to accept the shipment in its damaged condition, unless it was entirely worthless, was wrong, and the court committed no error in its interruption of such argument in the remark made at the time and objected to here.

2.   If it be considered that the provision in the bill of lading requiring claims for damages to be reported by the consignee in writing to the delivering line within 36 hours after he has been notified of the arrival of the freight at the place of delivery, and if such notice is not there given that none of the carriers shall be liable, is a reasonable regulation, we see no reason why it should not have been pleaded in defendant's answer as a bar to plaintiff's right to recover.   In other words, if there was a contract limiting the railroad company's liability, and it wished to avail itself of such a defense, it should have set it up in its answer.   *Kansas City, Pittsburg & Gulf Rd. Co.* v. *Pace*, 69 Ark. 257.

The question could not be raised by a demurrer, which does not reach the exhibits attached to the pleadings in cases at law, and the demurrer was properly overruled.   It having been in fact treated as raised and the case having been tried on that issue, we do not think the company can escape liability on account of it.   The delivering carrier had notice of the damaged condition of the shipment of peaches upon its arrival, its agent being present when an examination thereof was made by the agent of the consignee, who refused to accept the shipment on account of its damaged condition, and who also gave its said agent a copy of the telegram advising consignor that the shipment of peaches was damaged in their total value, and that he refused to accept them on that account.   The copy of the message, of course, was in writing, and was a sufficient compliance with the said provision.

3.   The contract of shipment, the bill of lading, was made with appellee, R. C. Cumbie, as evidenced by said bill of lading, and he had the right to bring suit thereon.   *Cantwell* v. *Pacific Express Co.*, 58 Ark. 490; Kirby's Digest, § 6008.

If others were wrongfully joined with him in said complaint, they could have been stricken therefrom upon motion of appellee; and if the demurrer be considered as such motion, and properly raised the question, and should have been sustained, its only effect would have been to permit the suit to proceed in the name of said consignor in the bill of lading, who was entitled to sue and recover the whole amount of the damages, and no harm could have resulted to appellant from the court's action thereon.

The judgment in the whole case is right, and is affirmed.