(134 So. 694)

## JENNINGS v. MISSOURI PAC. R. CO. et al.
### No. 30328.

March 30, 1931.

Rehearing Denied April 27, 1931.

Denegre, Leovy & Chaffe, of New Orleans, and Weeks & Weeks, of New Iberia, for appellant.

Wm. Alex Robertson, of Opelousas, and J. I. Boudreaux, of Abbeville, for appellee.

LAND, J.

Plaintiff has brought the present suit to recover the sum of $5,380.80 as damages resulting to 385 head of native cattle during shipment from Newellton and St. Joseph, La., over the Missouri Pacific Railroad Company to Alexandria, La.; over Morgan's Louisiana & Texas Railroad & Steamship Company from Alexandria to Lafayette, La.; and over Louisiana Western Railroad Company from Lafayette to Kaplan, La.

Plaintiff alleges that all of defendant carriers were guilty of negligence in handling this shipment and are liable to him in damages, jointly and in solido, and prays for judgment against each defendant accordingly.

Plaintiff's demands against Missouri Pacific Railroad Company and against Louisiana Western Railroad Company were rejected, and damages in the sum of $2,080, with legal interest from judicial demand, were

rendered in the lower court in favor of plaintiff against Morgan's Louisiana & Texas Railroad & Steamship Company.

The Morgan Company alone has appealed. Missouri Pacific and Louisiana Western Railroad Companies have passed out of the case, as plaintiff has not appealed from that part of the judgment rejecting his demands against these two companies. It is useless, therefore, to consider in this opinion whether or not either of these companies was guilty of negligence in handling the shipment of cattle in question.

The only questions before us for decision are the negligence vel non of the Morgan Company in the handling of these cattle and whether or not the amount of damages awarded in the lower court should be increased to $5,378.25, as prayed for by plaintiff and appellee in answer to the appeal taken by the Morgan Company.

The Morgan Company received notice by wire, dated August 31, 1920, 2:50 p. m., that cattle would arrive at Alexandria "about 3 p. m. Sept. 1st." Arrival of the cattle was delayed until 3:55 p. m. September 2d, and delivery was made by Missouri Pacific Railroad Company to the Morgan company on the interchange track at 4:40 p. m. September 2, 1920.

This company held these cattle on this side track without food, water, or rest from 4:40 p. m., September 2d, until 11:13 a. m. September 3d, when the first car was unloaded, and the last car was unloaded 11:40 a. m. September 3d, a delay of 18 hours and 33 minutes after the cattle were delivered to the Morgan Company by the Missouri Pacific Railroad Company, although these cattle had already been confined in stock cars at St. Joseph from 5 p. m. September 1st, until their arrival at Alexandria at 4.40 p. m.,

September 2d, a period of 23 hours and 40 minutes, making a total delay of 42 hours and 13 minutes during which the cattle were kept without food, water, or rest.

The cattle were reloaded on the cars by 6:40 p. m. September 3d, by the Morgan Company, left Alexandria the same day at 7:35 p. m., arrived at Lafayette 5:30 a. m. September 4th, and at Kaplan 1:30 p. m., after a run of 17 hours and 55 minutes.

Within three weeks after the arrival of the cattle at Kaplan 85 head died, and the market value of the remaining 300 head had been considerably impaired by maltreatment and mishandling of the shipment by the Morgan Company.

These cattle were tick free when shipped from St. Joseph, La., and the contention by the Morgan Company that they died from tick fever after their arrival at Kaplan is not supported by the evidence in the record.

It is clearly the duty of a railroad company, in handling a live-stock shipment, to carry it through to destination as expeditiously as possible, and with the least possible hardship on the animals, and at the same time to break the period of continuous confinement when necessary.

The Morgan Company cannot escape liability by its plea of nonpreparedness to receive this shipment at Alexandria. If the company did not have sufficient pens there to accommodate the shipment, it should have so notified the shipper or the Missouri Pacific Railroad Company on August 31, 1920, when the Morgan Company was advised by wire that the cattle would arrive at 3 p. m. September 1st, or it should have obtained the ample pens of the Missouri Pacific at Alexandria, or transported the cattle to Lafayette, where it had pens sufficiently large for the shipment.

As a matter of fact, the Morgan Company delayed unloading these cattle 12½ hours after the Missouri Pacific Railroad Company had voluntarily tendered to the Morgan Company the use of its pens at $1 per car of cattle, or $9 for the 9 cars to be unloaded, watered, and fed at Alexandria.

██ If the Morgan Company was under no obligation to receive these cattle when first delivered on the interchange track, because of delay in arrival of the shipment, why did the Morgan Company accept the shipment later on and thereby assume all liability for it?

The shipment of cattle was delivered to the Morgan Company by the Missouri Pacific Railroad Company well within the 36-hour limit. At the time of the delivery on the interchange track, only 23 hours and 40 minutes of the 36-hour limit had expired. The cattle were not then in bad condition, and, in our opinion, the Morgan Company was under obligation, as a connecting carrier, to receive the shipment when tendered to it by the Missouri Pacific Railroad Company.

In the case of Gulf, C. & S. F. Ry. Co. v. Batte (Tex. Civ. App. 1908) 107 S. W. 632, 635, it is said: "The charge requested as set out under the eleventh assignment of error, should have been given. It is to the effect that, if there was an actual tender of the cattle by the Gulf, Colorado & Santa Fé to the Atchison, Topeka & Santa Fé at Purcell, the latter road would not have been justified in refusing to receive the cattle, merely on the ground that the 28-hour feed and rest period had nearly expired. It was the duty of the Gulf, Colorado & Santa Fé Railway Company to tender the cattle to the Atchison, Topeka & Santa Fé Railway Company for shipment within a reasonable time after they arrived at Purcell; and we know of no rule

of law that would excuse the latter company from declining to receive the shipment, merely on the ground that the 28-hour feed and rest period had nearly expired, and that the burden would be placed upon that road to feed and rest the cattle. The duty to receive the shipment, when the tender is made within a reasonable time, is as much a burden resting upon the connecting carrier as is the duty of either of the carriers to feed and rest the cattle. This is one of the incidents of the transportation, and the connecting line could not delay the shipment for any such reason."

See, also, Seaboard Air-Line Ry. v. Friedman, 128 Ga. 316, 57 S. E. 778; St. Louis, I. M. & S. Ry. Co. v. Randle, 85 Ark. 127, 107 S. W. 669; McMillan v. Chicago, etc., R. R. Co., 147 Iowa, 596, 124 N. W. 1069.

██ Delivery of cars by initial carrier to a connecting carrier is completed by placing cars on an interchange or transfer track, and delivering of waybills therefor, in accordance with the custom prevailing at place of transfer. See authorities above cited.

According to the custom prevailing at Alexandria and elsewhere, cars are spotted on the interchange track, and the waybill is delivered, and this constitutes delivery.

As already stated in this opinion, the Missouri Pacific Railroad Company complied without delay with all of these formalities.

██ Carriers are liable for loss or damage to live stock delivered to them for shipment, unless they can prove that such loss or damage has been caused by accidental or uncontrollable events. Civ. Code, art. 2754; National Rice Milling Co. v. N. O. & N. E. Ry. Co., 132 La. 615, 61 So. 708, Ann. Cas. 1914D, 1099; Southern C. O. Co. v. N. O. & N. E. Ry. Co., 146 La. 541, 549, 83 So. 821.

The evidence plainly shows that there were no accidental or uncontrollable events to interfere with the unloading, watering, and feeding, by the Morgan Company, of the cattle shipped in this case within the 36-hour limit, and the failure of this company to have done so constitutes, in our opinion, a clear case of gross negligence upon its part, which resulted directly in the death of 85 head of these cattle, and left the remaining 300 head of the herd in a generally bad and gaunt condition.

The 385 head cost $8,900.05, and the average cost per head was $23.

The trial judge allowed plaintiff the average cost per head for the 85 cattle that died, or the sum of $1,955. He also allowed him the sum of $125 as pro rata of freight and feeding charges paid on these 85 head, or a total of $2,080, but rejected plaintiff's claim of $3,000 for impaired condition of remaining 300 head at $10 each, and also plaintiff's claim for $300, money spent in burning and otherwise disposing of the dead animals.

Plaintiff has answered the appeal, and prays that the judgment appealed from be amended so as to include these rejected items.

Plaintiff testified that these animals, if they had been received in good condition, would have been worth on the Kaplan market from $32.50 to $35 all round. Manseaux testified that, even in the emaciated condition in which the cattle finally reached Kaplan, he was ready to take the entire 385 head at $30 per head, provided they quit dying. The animals, however, kept on dying, and Manseaux dropped the negotiations.

Plaintiff finally sold the cattle the fall following the delivery at Kaplan at $25 a head.

As the cattle continued to die, Manseaux declined to buy a single head at any price, and the cattle were finally sold on a declining market.

Under these conditions, we do not find it possible to determine what was the impaired value of the cattle at the time Manseaux made his conditional offer as to price.

Nor do we feel justified in taking the price of $25 a head, a year later, as a basis upon which to estimate this impaired value.

For these reasons we decline to amend the judgment appealed from so as to include these rejected items.

Defendants filed an exception of no right or cause of action based upon the following clause contained in the contract for the transportation of the cattle: "That second party (plaintiff herein) will notify, in writing, the nearest station agent or general officer of one of the carriers concerned, regarding any loss or injury, from delay or otherwise, to the Live Stock covered by this contract, in time to enable said agent or officer to examine said stock before it is removed from the unloading pens or mingled with other stock; that if claim is to be presented for said loss or injury, written notice to that effect will be filed with the agent at point of origin or destination within 95 days, and verified itemized claim within 125 days, after the loss or injury occurred; and that a failure to comply with the provisions of this section shall be a bar to recovery for such loss or injury."

When the cattle arrived at their destination at Kaplan, plaintiff demanded that the agent of the Morgan Company and its branch line, Louisiana Western, examine the cattle before they were removed from the cars, and note their condition on the freight bills. The notations upon these bills show "general condition bad," "one calf dead," "one cow down."

■ The agent of the Morgan Company and its branch' line, Louisiana Western, had full knowledge of the injuries suffered by plaintiff's cattle before they were delivered to him at Kaplan on September 4, 1920, and they had ample notice to investigate plaintiff's claim for damages, and did investigate it, as shown by letter of date June 10, 1921, filed in evidence, and written by H. M. Moors, freight claim agent of the Morgan Company and its branch line, Louisiana Western.

In this letter Mr. Moors says: "In reply to your letter of June 7th in connection with above claim of Mr. K. Jennings, beg to advise that as you filed this claim against the Missouri Pacific, all our investigations have been forwarded to that company, and I would suggest that you address Mr. T. S. Walton, freight claim agent, Missouri Pacific Railway Company, St. Louis, Missouri, referring him to his claim, P-31786-26."

This letter is addressed to Mr. Gus A. Voltz, the attorney originally employed by the plaintiff to collect the claim for damages herein sued on.

The rule of law applicable here is found in C. J. vol. 10, § 490, pp. 338, 339, and is stated as follows: "In general, the giving of notice of claim for loss or injury provided for by the shipping contract is excused where the carrier has knowledge of loss or injury, as in these circumstances the necessity for notice is obviated. The rule permitting knowledge of the loss or injury to supply the place of a written notice is not a discrimination between railroads, nor is it a preference in favor of a particular shipper at the expense of others, as it is a mode of proof, applicable alike to all railroads and in favor of all shippers, and it is enforced against a carrier who has had possession of the property, with every opportunity to know the extent of the injury and its cause."

The exception filed by defendant carriers was properly overruled by the trial judge for two reasons:

First, because defendant carriers had actual notice of the injury sustained by plaintiff, both by written notation on the bills of lading, made by an agent of defendant carriers, and by actual knowledge.

Second, because plaintiff gave to defendant carriers due written notice of his claim within the delay fixed by the contract.

Judgment affirmed.

ST. PAUL, J., dissents.

On Application for Rehearing.

PER CURIAM.

In our original opinion, page 2, seventh line, we state that: "The Morgan Company received notice by wire, dated August 31, 1920, 2:50 p. m., that cattle would arrive at Alexandria 'about 3 p. m. Sept. 1st.'" We should have stated that: "The Morgan Company received notice by wire, dated August 31, 1920, 2:50 p. m., that cattle would arrive at Alexandria 'about noon Sept. 2nd.'" This change, in our opinion, does not affect the decree, and is made, therefore, by per curiam. The application for rehearing is refused.