(No. 22428.—

Ludwig Cohen, Appellee, *vs.* The Southern Railway Company, Appellant.

*Opinion filed December 17, 1934.*

NELSON J. WILCOX, NELSON TROTTMAN, and I. C. BELDEN, for appellant.

MAURICE L. DAVIS, for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

Ludwig Cohen, who transacted business under the name of Maywood Tobacco Company and who will hereinafter be referred to as the plaintiff, commenced this action in the municipal court of Chicago against the Southern Railway Company (hereinafter called the defendant) for a failure to deliver eight crates of cigarettes, valued at $432. He recovered judgment in the municipal court for the full amount claimed, which was affirmed by the Appellate Court for the First District. That court granted a certificate of importance, and the cause is before us on appeal from its judgment.

On June 28, 1929, the American Tobacco Company delivered the merchandise in question to the defendant at Reidsville, North Carolina, consigned to its own order for delivery at Maywood, Illinois, "notify Maywood Tobacco Co.," and the shipment was routed *via* Monon-Chicago and Northwestern Railway Company. The order bill of lading was sent through the usual commercial channels, with sight draft attached in the sum of $432, the bill of lading to be delivered to the plaintiff on payment of the draft. This payment was made at a bank in Maywood on July 9, 1929, and the bill of lading delivered to the plaintiff. In

the meantime the record indicates the shipment moved forward in the usual way, arriving at Maywood *via* Chicago and Northwestern railway on July 3, 1929, on which day it was unloaded in the freight house at Melrose Park, being the station which served Maywood. It was stipulated that the usual and customary time for a shipment to cover the distance involved would be five days, and the trial court found, as a matter of fact, that the reasonable time necessary, in the ordinary course of business, to transport the shipment from Reidsville would call for its arrival at Melrose Park at 9:00 A. M. on July 3. It was stipulated that it was the practice of the railroad company on arrival of shipments to send out post-card notices, but there is no evidence in the record as to whether or not any notice was given. There is evidence that the cigarettes were actually received at Melrose Park but none as to what became of them, and it is, in effect, conceded that the plaintiff has never received this merchandise.

This shipment was transported under the provisions of the bill of lading prescribed by the Interstate Commerce Commission, which, among other things, provided as follows: "Claims for loss, damage or injury to property must be made in writing to originating or delivering carrier or carriers issuing this bill of lading, within six months after delivery of the property, * * * or in case of failure to make delivery, then within six months * * * after a reasonable time for delivery has elapsed." It is conceded by both parties that this litigation must be determined upon a construction of the foregoing provision from the bill of lading, it being the contention of the defendant that the claim for loss was not made in writing within six months after a reasonable time for delivery had elapsed.

On this point the evidence and the finding of the trial court were as follows: The stipulations above mentioned as to the routine course of traffic between the two stations

involved was entered into in open court. The plaintiff introduced in evidence, without objection, a copy of the letter of his attorney dated January 3, 1930, addressed to the defendant, which made formal claim for the loss in question. The plaintiff also introduced a registered mail return-receipt from the defendant showing delivery of registered letter on January 6, 1930, at its home office in Chattanooga, Tennessee; also a letter from the defendant to the plaintiff's attorney dated January 7, 1930, acknowledging receipt of the written claim of January 3, which contained the following paragraph: "Claim was originally filed with the Southern Railway Company by the American Tobacco Company, and inasmuch as our investigation developed irregular handling on the part of the delivering carrier, all papers were referred to Mr. W. C. Johnson, F. C. A., C. & N. W. R. R. Company, Chicago, Ill., and we were notified by Mr. Johnson under his claim No. 30-190739, that claim would be handled to a conclusion by his company. On receipt of this letter the American Tobacco Company was notified and our records closed. I am to-day writing Mr. Johnson of the C. & N. W. R. R. Company status of claim and will be pleased to write you again on receipt of his reply." It was further established that the contract bill of lading contained a provision limiting the carrier's liability to that of a warehouseman, only, after the expiration of the free time allowed by tariffs on file "after notice of the arrival of the property at destination * * * has been duly sent or given and after placement of the property for delivery at destination * * * has been made." The free time provided for by the tariffs was forty-eight hours.

The trial court found as facts, in addition to the matters above stated, that the plaintiff's claim was filed with the initial carrier on January 6, 1930, that the claim was filed in writing within six months after a reasonable time for delivery had elapsed, and that the plaintiff was entitled to recover.

It is contended by the defendant that the reasonable time for delivery expired not later than July 5, 1929; that six months from this date would be January 5, 1930, and that the claim was therefore filed one day too late. The argument in this behalf appears to be entirely founded on decisions as to that point in time when the liability of a railroad company ceases to be that of carrier and becomes that of warehouseman, only. On behalf of the plaintiff it is urged that as between the consignee and the carrier the forty-eight-hour free-time period allowed by the bill of lading had extended the status of the carrier, as such, for that period of time; that a reasonable time for delivery can not be considered as having elapsed until after the status of carrier had been terminated, and that, without regard to the forty-eight-hour free-time provision, the reasonable time for delivery ought not to be considered as having elapsed until at least the end of the day following that on which the notice of arrival of the shipment would ordinarily be delivered, which in the case at bar could not be any earlier than July 6, 1929; that in any event, even if the time be assumed as July 5, six months from that date would be January 5, 1930, which fell on a Sunday, and that therefore the claim could be filed on the day following. Cahill's Stat. 1931, chap. 100, sec. 6.

In the view which we take of the case, neither the forty-eight-hour free-time provision which marks the boundary between the defendant company's liability as carrier and its liability as warehouseman, nor those numerous cases wherein the same point has been determined, are decisive on this inquiry. The Interstate Commerce Commission doubtless recognized the necessity for a sharp line of demarcation between these two differing functions, with their differing rules of responsibility, and it may be that for that reason it approved the tariffs in question fixing the expiration of forty-eight hours as the dividing point. This is an arbitrary rule, probably born of necessity, which may

or may not be reasonable in all cases. We are not presently concerned with its reasonableness, however, and we consider any discussion of it unnecessary to a decision of the present case.

The provision of the bill of lading in question permits the filing of the claim within six months after "a reasonable time for delivery" has elapsed. The question presented is not solely as to the time required for transportation but a reasonable time for delivery, which involves other and additional acts beyond the actual carriage of the goods. As a practical matter, delivery cannot be contemplated to be intended to occur instantly upon the arrival of the goods at their point of destination, and the contractual provisions must therefore be intended to provide some period of time in addition to that required for the actual transportation. The amount of this time must depend upon and vary with the circumstances attending each particular case. In *Chesapeake and Ohio Railroad Co. v. Martin,* 283 U. S. 209, 51 Sup. Ct. 453, the Supreme Court of the United States had this precise point under consideration and in its opinion said: "What constitutes a reasonable time depends upon the circumstances of the particular case. As applied to a case like this, it means such time as is necessary conveniently to transport and make delivery of the shipment in the ordinary course of business, in the light of the circumstances and conditions surrounding the transaction. (*Hazzard Co.* v. *Railroad Co.* 121 Me. 199, 202, 203, 116 Atl. 258.) Compare *First National Bank* v. *Pipe and Contractors' Supply Co.* (C. C. A.) 237 Fed. 105, 107, 108." The same question was before this court in *Babbitt* v. *Grand Trunk Western Railway Co.* 285 Ill. 267. In that case it was contended that a notice was filed on or about September 1, which would have been within the four-months' period limited in that particular bill of lading, but there was some question as to whether or not it was filed with the right official. A claim was un-

questionably filed with a proper official of the railroad company on September 26, which would have been about four months and twenty days after the shipment of the merchandise. In that opinion we said: "it cannot be said that September 1—or even September 26, the date of filing notice of claim with the delivering carrier—occurred more than four months 'after a reasonable time for delivery' had elapsed."

In the construction of this bill of lading, involving, as it does, an interstate shipment and having been promulgated pursuant to law by the Interstate Commerce Commission, we are bound by the decisions of the Federal courts. (*Georgia, Florida and Alabama Railway Co.* v. *Blish Milling Co.* 241 U. S. 190; *Southern Express Co.* v. *Byers,* 240 id. 612.) Referring to the circumstances surrounding this particular case, as required by the rule of the Supreme Court of the United States in the *Chesapeake and Ohio case, supra,* we find the following: The merchandise was transported nearly a distance of one thousand miles. It was non-perishable in quality and consisted of less than a car-load lot. It was shipped on a shipper's order bill of lading, "notify Maywood Tobacco Company," thus showing on the face of the contract that the parties themselves contemplated some reasonably necessary delay in taking up the bill of lading to procure the shipment. (*St. Louis, Iron Mountain and Southern Railway Co.* v. *Bliss-Cook Oak Co.* 176 S. W. (Ark.) 325.) The shipment was routed over three different railroads—*i. e.,* the Southern, the Monon and the Northwestern. There was no evidence that any notice was given to the Maywood Tobacco Company, as required by the face of the bill of lading, and there was no evidence as to what actually became of the goods, and therefore no certainty that delivery could have been made at any time. The Fourth of July, a national holiday, intervened on the day following the delivery of the goods to Melrose Park, and it is a circum-

stance to be considered that no draft could have been taken up at any bank on that day nor any mail delivered had a notice been mailed instantly upon arrival of the goods. The witness for the railroad company who was the station agent, testified that he himself did not know until July 15 that the goods had been lost, stolen or mis-delivered. In order to bar the plaintiff's claim under the six-months' rule it would be necessary to assume that he either had, or should have had, the knowledge on July 5 that the goods were at the depot and that he was not entitled to as much as twenty-four hours in which to take up the draft and accept the delivery. Upon consideration of all of the circumstances in this particular case we cannot so hold, nor that the trial court erred in finding that the claim was filed within six months after a reasonable time for delivery.

There is still another reason for sustaining the judgment in this case. In the case of *Georgia, Florida and Alabama Railway Co.* v. *Blish Milling Co. supra,* the milling company shipped a car-load of flour from Indiana to Georgia upon a bill of lading to its own order, "notify Draper-Garrett Grocery Company" at Bainbridge, Georgia. The bill of lading in that case was similar to the one here, except that the time limitation was four months instead of six. No formal claim was made against the railroad company, but there had been a series of telegrams which made it clear that the milling company intended to hold the railroad company responsible, and the telegrams, as a series, sufficiently identified the shipment in question. Referring to the stipulation as to time in the bill of lading the Supreme Court of the United States said: "Granting that the stipulation is applicable and valid, it does not require documents in a particular form. It is addressed to a practical exigency and it is to be construed in a practical way. The stipulation required that the claim should be made in writing, but a telegram which in itself, or taken with other telegrams, contained an adequate statement must be deemed

to satisfy this requirement." Several cases are there cited. We do not think it to be the spirit or intention of the time-limiting clause that any formality or technical exactness be required, but that it is merely intended to give reasonable notice to the railroad company while the facts are still fresh, in order to permit a reasonable investigation and examination of the claim.

Referring to the record before us, we find from the letter written by the defendant company on January 7 that a claim had previously been filed with that company by the American Tobacco Company upon this identical shipment, that all papers had been referred to the Chicago and Northwestern Railway Company at Chicago, and that the Southern Railway Company had been notified that the claim would be handled to a conclusion by that company. The letter further stated that upon receipt of that information the defendant had closed its files but was again writing the Northwestern Railway Company in regard to the claim and would let the plaintiff hear from it again on receipt of the reply. If the claim was filed as stated by the defendant's own letter it must have been in some written form, and it could not have been in its hands long enough prior to January 7 for it carry on a correspondence with the Chicago office of the Chicago and Northwestern Railway Company unless it was well within the six-months' period. The bill of lading does not contain any provision specifying who shall make the claim nor in what form it shall be presented, and upon this record we can find no reason for holding that the claim was not filed within six months after a reasonable time for delivery had elapsed.

The judgment of the Appellate Court affirming the judgment of the municipal court of Chicago will be affirmed.

*Judgment affirmed.*