APPALACHIAN ELECTRIC POWER COMPANY *v*. THE VIRGINIAN
RAILWAY COMPANY

(CC 675)

Submitted February 8, 1944.    Decided March 14, 1944.

KENNA, JUDGE, absent.

Campbell, McClintic & James, Stanley E. Dadisman and Lee M. Kenna, for plaintiff.

Brown, Jackson & Knight, Robert G. Kelly· and Frank R. Lyon, Jr., for defendant.

ROSE, PRESIDENT:

In the action in assumpsit of Appalachian Electric Power Company against The Virginian Railway Company the Circuit Court of Kanawha County, on its own motion, has certified to this Court the questions of law arising upon the overruling of a demurrer to a special plea.

The action is for alleged damages to four electric transformers of the plaintiff shipped by the plaintiff from Kopperston, in Wyoming County, a station on the defendant's railroad, to itself at Cabin Creek Junction, in Kanawha County, a station on the railroad of The Chesapeake and Ohio Railway Company. On arrival at the latter station the transformers were admittedly in some degree damaged, and are alleged to have received this injury after delivery to the defendant at Kopperston and before leaving the point of shipment.

The special plea in question sets forth in considerable detail what the defendant alleges to be the full facts in the case. Particularly it shows that the shipment was delivered May 15, 1940, and that no claim in writing or otherwise was made against the defendant until July 25, 1941, whereas, Section 2 (b) of the bill of lading under which the shipment was made contained this provision:

"As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export), or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims·are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

The plea further shows that at the time of delivery of the transformers to the plaintiff as consignee, its agent called the attention of the agent of The Chesapeake and Ohio Railway Company to their damaged condition, advising him, however, that the amount of damage could not be ascertained until repairs were made; that the delivering company's agent then voluntarily, and not at the request of the plaintiff or of its agent, made the following notation on the freight bill receipted and delivered to the plaintiff: "Transformers damaged when received and delivered extent not yet determined signed J. J. Murray Agent"; that the said railway agent on the same day, not at plaintiff's request but as a part of the office routine and in compliance with the instructions of his employer, prepared and sent to the general claim agent of The Chesapeake and Ohio Railway Company, on a form prescribed by that company for that purpose, a report of damages to the same effect, a copy of which report was also sent by Murray to an agent of the defendant at Mullens, Wyoming County, who, it is alleged, knew of the damage before the transformers left the shipping point, and which copy was by said defendant's agent sent to, and

received by; the general claim agent of the defendant at Norfolk, Virginia; and that the sole and only claim in writing for damages was by a letter from an agent of the plaintiff dated July 23, 1941.

The demurrer to the plea assigned grounds in support thereof as follows:

"1. The allegations in said special plea are not sufficient to show any defense on the part of the defendant to the action of the plaintiff in the declaration alleged; and

"2. The facts alleged in paragraphs 3 and 4 of said special plea either (1) constituted a claim in writing filed within nine months after delivery of the transformers as required by Section 2(b) of the bill of lading executed by plaintiff and defendant, or (2) excused the filing of any further claim as a condition precedent to recovery under Section 2(b) of said bill of lading."

Section 2(b) of the bill of lading appears to be in compliance with the Federal Interstate Commerce Act, 49 U. S. C. A., Section 20(11), which is in part as follows:

"* * * *Provided further*, That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice: * * * *"

This Federal statute affects directly only interstate shipments, but railways doing both interstate and intrastate business use this common form for both types of business. No statute of this State is pointed out which would forbid, directly or indirectly, the inclusion in a freight bill of lading covering intrastate shipments in this State, of said Section 2(b). Code, 24-3-2, forbids dis-

crimination between patrons of a public utility and the defendant argues here that, to allow an action on this claim for which no claim in writing has been filed within the nine-months period, would be such discrimination.

Although there is no statute, Federal or local, which compels the inclusion of Section 2 (b) in a bill of lading, yet there is no statute which, directly or indirectly, forbids such inclusion. Cases beyond number from the Federal courts, and from courts of other states, universally hold that a provision in an interstate bill of lading making a claim in writing a prerequisite to an action for damages to goods shipped is valid. We have made the same pronouncement as to a substantially identical provision in a bill of lading covering an interstate shipment. *Hubbard Grocery Co.* v. *Payne,* 94 W. Va. 273, 118 S. E. 152. We conceive of no reason why a different holding should be required, or permitted, in the case of an intrastate shipment. The validity of a requirement for the filing of a claim in writing in case of interstate shipments did not arise from the Federal Act. That statute merely limits a right to require the filing of such a claim as a condition precedent to action—a right which exists by common law. We hold that the requirement of Section 2 (b) that a claim in writing be filed within nine months of delivery of the property alleged to have been damaged is a valid and binding prerequisite to the maintenance of an action for such damages.

The plaintiff, however, asserts that, in this case, sufficient claim in writing was actually filed. The notation by the agent of the delivering railway on the freight bill and his written report to his own company and to the defendant are claimed to be such. Our attention is called to the fact that Section 2 (b) of the bill of lading does not state by whom the claim shall be filed or that it shall be signed by the claimant or by any other person. The language of that section is that "claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading * * *." But, can there

be any question that it is clearly meant that the person damaged shall file the claim? Who else could have any legal power so to do? Could a carrier file a claim with or against itself? Or could the agent of the carrier act also as the agent for the shipper? Or, as a factual matter does either of the writings made out by the agent of the delivering carrier purport, or appear, to be a claim in behalf of the plaintiff? On the freight bill, the writing of this agent was merely a statement that there was cer-, tain injury to the property, the extent of which could not be determined. This bill was then delivered to the plaintiff, not to the defendant. It was not filed with the defendant at any time. This writing, therefore, in no sense can be held to be the filing of a claim. Nor is this agent's official report to his company, and to the defendant, more efficacious. These reports are merely that and no more—reports of damage such as the agent was required to make in all cases where goods in shipment were injured. The agent did not report a claim for damages, for no such claim had been made to him; he did not report damage in any amount, or injuries in any degree, for these were unknown to either party and unascertainable; he did not make this report at the request of the plaintiff, or on its behalf, or even with its knowledge. As for the plaintiff, it did absolutely nothing whatever toward asserting a claim for damages other than to call the attention of the delivering company's agent to some injury of the goods. Indeed, plaintiff's letter of July 23, 1941, is in form and substance a first, not a subsequent, or follow-up, claim. It reads:

"We attach hereto our bill #M61.04-97, dated June 30, 1941, in an amount of $2307.90, covering repairs to four 333 KVA Transformers of our company which were damaged while in transit from Kopperston, W. Va., to Charleston, W. Va., on May 1, 1940.

"We would appreciate it if you will place this invoice in the usual channels for payment."

And from plaintiff's letter of July 31, 1941, it clearly appears that the plaintiff did not, on that date, consider that it had theretofore made any claim as required by this section. This letter contains the following paragraph:

> "We note your reference to provision on the reverse side of bill of lading, requesting that claims for damage be made within a nine-months period. We, of course, knew nothing about this provision until your letter of July 28th was received and, had we been acquainted with it, we would have arranged to present the bill at an earlier date. We did experience considerable delay in securing parts from the manufacturer with which to make the necessary repairs, and this accounts for the major part of the delay."

We, therefore, search the record in vain for anything which might be construed as a claim in writing, within the provisions of Section 2(b) of the bill of lading.

We are cited to certain cases in which something less than a formal written claim against the carrier has been considered sufficient. In *Georgia, Florida & Alabama Railway Co.* v. *Blish Milling Co.*, 241 U. S. 190, 36 S. Ct. Rep. 541, 60 L. Ed. 948, a telegram stating, "We will make claim against railroad for entire contents of car at invoice price", was held sufficient. In *Cohen* v. *Southern Railway Co.*, 358 Ill. 532, 193 N. E. 480, a statement in a letter of the carrier "that a claim had previously been filed in time would sustain an action". In *St. Louis, I. M. & S. Ry. Co.* v. *Cumbie*, 101 Ark. 172, 141 S. W. 939, delivery to the carrier of a copy of a telegram sent by the consignee to the consignor claiming damages to shipment equal to total value was held sufficient. In *E. H. Emery & Co.* v. *Wabash Railroad Co.*, 183 Ia. 687, 166 N. W. 600, written notice that consignee "will file claim" and giving details of damage was held a good claim in writing. In all these cases, it will be seen there was at least some notice in writing, the adequacy of an actual notice being the sole question raised; but in the case at bar no claim at all was filed.

Certain other cases go further toward emasculating the

requirement of the bill of lading for the filing of a claim.
In *Jennings* v. *Missouri Pacific Railroad Co.*, 172 La. 522,
134 So. 694, it was held that giving of notice of loss or
injury is excused where carrier's agent has full knowledge
of injuries and damage. In *United Brokers' Co.* v. *Southern Pacific Co.*, 86 Ore. 607, 169 P. 114, the Court announced
that the filing by consignee of written statement of carrier's agent showing fully, cause of damage and its
amount was sufficient notice in writing. In *Illinois Central Railroad Co.* v. *Rogers & Hurdle*, 116 Miss. 99, 76 So.
686, the requirement by consignee that carrier's agent
endorse on freight bill a statement that livestock shipment was received "in bad shape account overrun and
lack of feed and water" was adequate compliance with requirement of claim in writing. Without conceding to these
cases any weight in this State, we need only call attention
to the fact that in each, much more in the way of information as to the character and amount of damages was given
to or possessed by the carrier than in the present case.

The second position of the plaintiff is that the requirement for filing of a claim in writing has been waived by
the defendant, or has otherwise become unnecessary. But,
at least in interstate shipments, unquestionably the rule is,
both of Federal and state courts, that this requirement of
a bill of lading cannot be waived. "Accordingly, the terms
of an interstate bill of lading or shipping contract cannot
be modified or waived by the parties thereto, nor can the
carrier by its conduct give the shipper a right to ignore
the terms thereof, as this would constitute a discrimination, void as against public policy. Also, although there is
authority to the contrary, it is generally held that stipulations in such contracts requiring a written claim or notice
of loss or damage to be presented within a specified time,
* * * cannot be waived by the carrier, * * *." 13 C. J. S.
Carriers, Section 364. This text is supported by an abundance of cases. We are cited to the following cases, in
which statements more or less to the contrary are found:
*E. H. Emery & Co.* v. *Wabash Railroad Co.*, 183 Ia. 687,

166 N. W. 600; *Jennings* v. *Missouri Pacific R. Co.*, 172 La. 522, 134 S. 694; *Indiana Harbor Belt R. Co.* v. *Alpirn*, 139 Neb. 14, 296 N. W. 158; *St. Louis, I. M. & S. Ry. Co.* v. *Cumbie*, 101 Ark. 172, 141 S. W. 939. But we are not persuaded by these sporadic expressions. In *Kahn* v. *American Railway Express Company*, 88 W. Va. 17, 106 S. E. 126, this Court did assume, without deciding, that such a waiver was possible, but held that no such waiver could be found in the record of that case. This assumption, however, is expressly repudiated in our later cases. In *Hubbard Grocery Company* v. *Payne, supra,* it is said:

> "The parties cannot waive the terms of the interstate bill of lading contract, nor can the carrier by its conduct give the shipper the right to ignore these terms and hold the carrier to a different responsibility from that fixed thereby."

And in the earlier case of *William F. Mosser Company* v. *Payne*, 92 W. Va. 41, 114 S. E. 365, we held that the carrier would not be permitted to waive the provision of the bill of lading to the effect that actions for damages could not be brought after the period specified therein. We said:

> "Parties to a contract of interstate shipment made pursuant to the Act to Regulate Commerce, can not waive its terms by conduct or otherwise, including the two years and one day limitation as a defense to an action brought against it after that time, stipulated in the uniform bill of lading adopted by the carriers.

> "Nor can such limitation as to time for bringing suit contained in such bill of lading, being the subject of special contract, be avoided by the shipper on the theory of unreasonableness; such provision, being the subject of special contract in the bill of lading, is not affected by the general statute of limitations, state or federal."

These cases dealt with interstate bills of lading and invoke the Federal statute for their support. But Code, 24-3-2, compels the same conclusion. This section reads in part:

"* * * It shall be unlawful for any public utility subject to the provisions of this chapter to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular character of traffic or service, in any respect whatsoever, or to subject any particular person, firm, corporation, company or locality, or any particular character of traffic or service, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Certainly the waiver of the filing of a claim in writing as a prerequisite would be a favoring of the defendant over other shippers or, conversely, would be the subjecting of other shippers to more severe requirements than this plaintiff. To waive this restriction in favor of one shipper and not all would be a clear discrimination forbidden by this statute.

Other state courts have held valid and enforced this section of a bill of lading as to intrastate shipments precisely as though the shipments were interstate. *Farmers' Grain & Supply Co.* v. *Atchison, T. & S. F. Ry. Co.,* 120 Kan. 21, 245 P. 734; *Fletcher* v. *New York Central, Etc., R. Co.,* 229 Mass. 258, 118 N. E. 294; *Chicago, St. P., M. & O. Ry. Co.* v. *Kileen,* 243 Wis. 161, 9 N. W. 2d 616; *Kershaw Oil Mill* v. *Northwestern R. Co.,* 133 S. C. 226, 130 S. E. 647; *Chesapeake & Ohio Ry. Co.* v. *National Fruit Products Co.,* 155 Va. 438, 155 S. E. 630.

Although no possible waiver would have been valid, it is clear that nothing amounting to such a waiver is shown by this record. The defendant's agent at the shipping point did know of the damage before the shipment was moved, and its agent at Mullens forwarded to the general claim agent of the defendant the report of damages received from the agent of the delivering railway company. The latter agent did report in due course and as his orders required, that a damage of some unascertained amount and kind had been discovered. But it is not claimed that the plaintiff either knew or relied upon these acts. Neither

of these railway companies had any other communication or dealing with the plaintiff regarding this shipment within the nine-months period. Neither did anything or refrained from anything which could have caused the plaintiff to assume that the filing of the claim in writing would not be required. The plaintiff has never so contended. On the contrary, by its letter of July 31, 1941, it stated that it did not even know of the existence of Section 2 (b) of the bill of lading. This statement by clear implication means that it did not refrain from filing its claim within nine months in the belief that this time limit had been waived or otherwise became unnecessary.

We, therefore, are of opinion that the allegations in the special plea are sufficient to constitute a defense to the plaintiff's action. Accordingly, the action of the trial court in overruling plaintiff's demurrer to said special plea is affirmed.

*Affirmed.*