TAMCO CORPORATION, an Illinois corporation, Ruben G. Musikantow and and Ben Musikantow, Plaintiffs,

v.

FEDERAL INSURANCE COMPANY OF NEW YORK, Defendant.

No. 60C795.

United States District Court
N. D. Illinois, E. D.
April 23, 1963.

Alfred S. Druth, Epton, Scott, McCarthy & Bohling, Chicago, Ill., for plaintiffs.

Jerome H. Torshen, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for defendant.

ROBSON, District Judge.

This is a declaratory judgment action brought April 27, 1960, by insured Tamco Corporation, and Ruben G. and Ben Musikantow, its sole stockholders, managing officers, and assignees. Plaintiffs seek to establish the insurer's liability on an endorsement, issued May 25, 1955, covering the depreciation value of furniture, fixtures and other supplies, which endorsement was issued in connection with a fire insurance policy of defendant.

A fire occurred on July 28, 1955, which destroyed the insured Tamco Corporation's plant. Liability was determined and paid under the fire policy,[1] but not under the depreciation endorsement. On October 24, 1962, the Court denied cross motions for summary judgments because of the existence of fact issues.

Articles of dissolution of plaintiff Tamco Corporation were filed September 17, 1956. It was dissolved October 2, 1956. Theretofore, on July 25, 1956, Tamco assigned its rights under the depreciation endorsement to plaintiffs Musikantows. The assignment was submitted to defendant, as required by the policy, but it took no action thereon. The stipulation of facts, however, contains a copy of defendant's receipt of the assignment by certified mail.

The parties have stipulated as to the facts and have submitted the cause upon the pleadings, stipulation and briefs. This stipulation reveals that Tamco engaged in the manufacture of mens' and boys' sport shirts.

Paragraph 7 of the complaint alleges:

"That although the Federal Insurance Company of New York paid the sum of $13,377.93 * * * and entered into a compromise, settlement and adjustment of their liability under fire insurance policy F2324114, they have unreasonably refused to pay the sum of $20,593.-99, which is due and owing under the depreciation insurance rider which formed a part of said fire insurance policy."

The complaint seeks a construction and declaration of the coverage of the endorsement to the policy and that it be binding upon the insurer, and prays that the proceeds be paid to the assignees and that they not be required to repair, rebuild or replace the destroyed machinery, fixtures and improvements on the same or another site. In the alternative, plaintiffs pray that:

" * * * [I]f the court adjudicates and determines that it is necessary for the plaintiff corporation, or its assignees to repair, rebuild or replace the said machinery, fixtures and improvements on another site, that the said Federal Insurance Company of New York would then be liable to pay for same."

The amendment of November 20, 1961, to the complaint seeks a determination that the defendant insurer is liable on "the adjustment, compromise and settlement set forth in paragraph 3 * * * as a matter of contractual obligation, independent of any provisions of said policy of insurance," and is, therefore, obligated to pay $20,593.99 to plaintiffs "based on said adjustment, settlement and compromise."

Defendant's original answer, filed May 27, 1960, denies that the refusal to pay the sum of $20,593.99 for depreciation is unreasonable and that plaintiffs are entitled to said sum or any part thereof. It fails[2] to make any mention of the allegation in the complaint of the compromise or settlement. An amended answer, filed April 3, 1962, went further, denying that there had been a compromise settlement and stating that there has "merely been a determination of the amount of money for which defendant would be liable in the event that plaintiffs had complied with the terms and conditions of the policy of depreciation insurance."

Defendant denies all liability under the depreciation endorsement. Insurer claims that plaintiffs-assignees have no right to sue thereunder inasmuch as the insurer never consented to the assignment, as required by the policy, and plaintiff corporation has long since been legally dissolved and so may not maintain

---

1. $96,666.37 was paid by the co-insurers on the several policies the Corporation held for fire insurance.

2. Defendant says this failure was inadvertent and cured by amendment, and, being superseded is not a judicial admission and constitutes at most an evidentiary, as distinguished from a judicial, admission. (Precision Extrusions, Inc. v. Stewart, 36 Ill.App.2d 30, 183 N.E.2d 547 (1962)).

this suit three and a half years after dissolution. It further asserts that plaintiffs have not met the express condition precedent to insurer's liability under the endorsement in that the damaged or destroyed property has never been repaired, rebuilt or replaced.[3] It also contends that no action may be maintained for a loss unless instituted within a year thereof.[4] It further asserts that there is no actual controversy within the meaning of the declaratory judgment act[5] inasmuch as plaintiffs can suffer no loss until they comply with the endorsement's condition precedent of repair or replacement. Defendant maintains the Court would be rendering an advisory opinion on a speculative or hypothetical situation (Beck v. Binks, 19 Ill.2d 72, 165 N.E.2d 292 (1960); Exchange National Bank of Chicago v. County of Cook, 6 Ill.2d 419, 129 N.E.2d 1 (1955); Spalding v. City of Granite City, 415 Ill. 274, 113 N.E.2d 567 (1953)). Finally, the insurer claims that there was no compromise or settlement. And even if there had been a compromise settlement by the insurer's adjusters, it would be invalid as beyond their powers because extending insurance coverage. (Commonwealth Insurance Co. of N. Y. v. O. Henry Tent & Awning Co., 287 F.2d 316 (7th Cir. 1961); Peters v. Great American Ins. Co., 177 F.2d 773 (4th Cir. 1949)).

The Court concludes that plaintiffs-assignees properly bring this action for declaratory judgment relief and are entitled to the alternative relief stated in paragraph 4 of the prayer of the complaint, i. e., payment under the depreciation endorsement upon their compliance with the rebuilding and replacement condition of the endorsement.

The standard fire insurance policy, issued April 19, 1954, insured plaintiff corporation

"* * * to the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss * * * against all direct loss by fire. * * *"

The policy and endorsement further provides:

"It shall be optional with this company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within 30 days after the receipt of proof of loss herein required.

"Assignment of this policy shall not be valid except with the written consent of this company.

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

The depreciation endorsement was for $22,000 on certain furniture, fixtures and other equipment and supplies which did not constitute a permanent part of the building. The endorsement defined "depreciation" as "meaning the difference, at the time of the loss covered hereunder,

3. Thompson v. Fidelity & Casualty Co., 16 Ill.App.2d 159, 167, 148 N.E.2d 9 (1958); American Ins. Co. v. Rosenberg, 28 Ill. App.2d 357, 171 N.E.2d 662 (1960); Commonwealth Ins. Co. of N. Y. v. O. Henry Tent & Awning Co., 7 Cir., 287 F.2d 316 (1961). Defendant maintains that if plaintiffs were permitted to be compensated without replacement this depreciation endorsement would constitute an illegal wagering contract.

4. Johnson v. Humboldt Insurance Co., 91 Ill. 92 (1878); Western Coal & Dock Company v. Traders Insurance Company, 122 Ill.App. 138 (1905).

5. Defense asserted in the amended answer. The original answer admitted a "controversy initiated by plaintiffs."

between the replacement value new and the actual cash value of the property insured." An important part of this endorsement was:

"This policy does not cover:

"(b) Any loss unless and until the damaged or destroyed property is actually repaired, rebuilt or replaced on the same or another site. * * *"

* * * * * *

"(d) In the event that the company or companies carrying the direct property damage insurance elect to repair, rebuild or replace the property damaged or destroyed."

After the fire, adjusters representing both the Tamco Corporation and the insurer met and "negotiated as to the value of each and every item of machinery, equipment, furniture and fixtures which were destroyed in the fire." The schedule of the amounts "containing final figures agreed to by the insurance company adjusters and the insured's public adjuster" is a part of the stipulation, and specifies that as to the depreciation there was an insurance coverage of $22,000, a value of $29,115.08, with a loss of $27,254.43, and a claim of $20,593.99.[6]

The $96,666.37 paid by the co-insurers was the amount of the loss sustained, determined by subtracting the sum of $20,593.99 from the replacement cost new of the property. The deduction was for accrued depreciation of the property. The stipulation further states:

"The amount of $20,593.99, being the accrued depreciation of the property, was not paid by FEDERAL as TAMCO did not repair, rebuild or replace the property on the same or another site. It was agreed by FEDERAL'S adjusters that this sum, that is $20,593.99, was the measure of loss under the depreciation policy issued by FEDERAL to TAMCO. * * *"

It is stipulated that: "To date the property covered by the depreciation endorsement * * * has neither been repaired, rebuilt or replaced on the same or another site."

■ *Appropriateness of Declaratory Relief.* There can be no question that this Court has no power to issue advisory opinions under the declaratory judgment act. But the Court does not deem this cause to be advisory or speculative because brought prior to a compliance with the condition of repair and replacement under the depreciation endorsement. Conceding there is no liability of the insurer under the depreciation endorsement until the condition is complied with, there remains the very obvious controversy that the insurer *now firmly denies liability even if the condition is met.* The refusal was not grounded solely because the endorsement's condition precedent had not been met[7] but additionally because the insured corporation had dissolved and because more than a year had passed since the occurrence of the loss. Is the insured required in that situation to fulfill the costly condition of replacement at its peril, expending the *agreed* extent of depreciation loss of $20,593.99 (and considering the coverage paid under the other policies, evidently much more) before it

6. The amount which plaintiffs allege defendant has unreasonably refused to pay and which is due and owing under the depreciation insurance rider.

7. In Pennsylvania Casualty Co. v. Upchurch, 139 F.2d 892 (5th Cir. 1943), it was said: " * * * [W]here there is an actual controversy over contingent rights, a declaratory judgment may nevertheless be granted." In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273–274, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), in discussing the *Fed-*

*eral* Act, the Court said: "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

* * * * * *

"It is clear that there is an actual controversy between petitioner and the insured. * * * If we held contrariwise as to Orteca because, as to him, the controversy were *yet too remote,* it is pos-

is entitled to assert defendant insurer's *presently* denied liability? The declaratory judgment act would be of little benefit if that were the case. It has recently been said that "Declaratory judgment statutes should be liberally construed to effectuate the ends of justice." (Farmers Automobile Insurance Association v. Janusick, 30 Ill.App.2d 352, 358, 174 N.E.2d 705, 708 (1961))

■ The Court concludes that a present controversy exists and that declaratory relief is proper.

*Effect of Failure of Insurer to Accept Assignment.* It is argued that none of the plaintiffs has a right to sue—the corporation because it has been dissolved for more than two years, and the individuals because the insurer never accepted the notice of assignmnet sent to it. The stipulation contains a copy of the receipt of the notice of assignment sent by certified mail.

■ The law seems clear that the individual plaintiffs as assignees have the right to sue under the assignment, irrespective of the insurer's lack of consent. The reason for this holding is that an assignment after the loss is not an assignment of the policy but of the cause of action arising thereunder. Thus the law is stated in Illinois Law and Practice, Insurance, § 483:

> "General stipulations in policies prohibiting assignment thereof except with the insurer's consent, or on giving some notice, or like conditions, ordinarily apply only to assignments before loss and *do not prevent an assignment, after loss, of the claim or interest of the insured in the insurance money then due in payment of the loss.*

"An assignment, after a loss, vests in the assignee whatever interest the assignor has in the proceeds of the policy." (Italics supplied.)

In Lain v. Metropolitan Life Ins. Co., 388 Ill. 576, at p. 578, 58 N.E.2d 587, at p. 588 (1945), it was stated:

> "The general rule, supported by a great wealth of authority, is that general stipulations in policies, prohibiting assignment thereof except with the insurer's consent, or upon giving some notice, or like conditions, *have universally been held to apply only to assignments before loss, and, accordingly, not to prevent an assignment, after loss, of the claim or interest of the insured in the insurance money then due in respect to the loss.*" (Italics supplied.)

(Similarly, Morticians' Acceptance Co., Inc. v. Metropolitan Life Insurance Company, 389 Ill. 81, 58 N.E.2d 854 (1945); 29 American Jurisprudence, Insurance § 655.)

It is noteworthy that the Musikantows' affidavit states:

> "At no time did 'FEDERAL' ever advise plaintiffs of any objection of the assignment of said policy after loss. In fact, said plaintiffs were

sible that opposite interpretations of the policy might be announced by the federal and state courts." (Italics supplied.)

The further thought occurs to the Court that since, as recently held in The Farmers Automobile Insurance Association v. Janusick, 30 Ill.App.2d 352, 174 N.E.2d 705, an insurer is entitled to have its liability under a policy declared prior to time of judgment against the insured, the insured's corollary right to have that same coverage declared should obtain after the event giving rise to the question.

This is not a case where "the question of whether the plaintiff will suffer any infringement of its rights is speculative,—

if the interests of the plaintiff will be adversely affected only in the event some future possibility occurs or does not occur,—the action for declaratory judgment should be dismissed." State Farm Mutual Automobile Insurance Co. v. Morris, 29 Ill.App.2d 451, 173 N.E.2d 590 (1961). It is no longer speculative whether defendant insurer denies liability. Both its answer and amended answer unequivocally do that. The only situation in which defendant could correctly maintain this controversy was truly contingent would be if it were willing to concede the sole basis for its assertion of nonliability was the failure to perform the condition precedent.

advised by Charles Dann, insurance broker and agent for the FEDERAL INSURANCE COMPANY, that it was not necessary to procure a consent to the assignment by 'FEDERAL' for the reason that loss had already occurred."

The Court therefore rejects the defendant's contention that the individual plaintiffs lack standing to sue under the depreciation endorsement, which conclusion makes unnecessary a determination of the long dissolved corporate-assignor's right to sue.

*Accord and Satisfaction.* Plaintiffs' contention that an accord and satisfaction were arrived at by the respective parties' insurance adjusters when they determined the extent of the losses under the policy and the endorsement has merit. The stipulation states that Exhibit A annexed thereto is "the document containing final figures *agreed to* by the insurance company adjusters and the insured's public adjuster." (Italics supplied.) Schedule B contains this tabulation:

|  | "Insurance | Value | Loss | Claim |
|---|---|---|---|---|
| Primary Ins. | $112,000.00 | $100,705.77 | $ 96,666.37 | $ 96,666.37 |
| *Depreciation* | 22,000.00 | 29,115.08 | 27,254.43 | 20,593.99 |
|  | $134,000.00 | $129,820.85 | $123,920.80 | $117,260.36" |

(Italics supplied.)

---

The deposition of Mr. Fienk, representing Tamco, reveals his statement that " * * * during the course of the adjustment, the amount of the depreciation was agreed upon between the adjustor representing the insurance company and myself." His deposition further reveals that there were some discussions about a *payment* under the depreciation policy, "either in full, or a compromise," and that a further discussion with the insurer would be involved, and that one Charles Dann, the broker, indicated that *"the insurance company turned down any offer of compromise, and that they would make payment after the depreciation was replaced."* [8] (Italics supplied.)

There can be no question that a careful study of the schedules attached to the Stipulation of Facts, with the excerpt of the schedule above, shows that there was a very definite agreement by the adjusters of the *precise dollar extent* of the insurer's liability under the depreciation endorsement if liability be estab-

lished. It is even conceivable that there was an absolute accord and satisfaction with waiver of the condition precedent of repair, otherwise why would the parties trouble to compute the liability under the depreciation endorsement in advance of establishment of the extent of liability thereunder, which would crystallize with the actual repair, rebuilding or replacement of the damaged or destroyed property?

Ruben Musikantow testified by deposition that as a result of the fire the corporation was compelled to cease operations. They made an attempt to go back into business for a period of from a year and a half to two and a half years, making a number of surveys in various areas for a place to locate, the last survey being made about January, 1958. The affidavit of the Musikantows states:

"That the fire completely destroyed their business and rendered it impossible for them to again es-

---

8. Dann testified that Mr. Lederer (of the firm which was a general agent of insurer) said to Mr. Dann (who officed free with Lederer) that "Federal insisted on invoking policy conditions and were unwilling to offer a cash settlement." Whether this was communicated by Dann to plaintiffs does not seem apparent.

tablish their business, notwithstanding their best efforts to do so for a period of approximately 2½ years after the fire."

They stated this was because the negotiations after the fire took several months and their 120 skilled workers had found work elsewhere and their buyers purchased from other sellers; the landowner refused to rebuild for them. It was stated that there, was a "dispute" with the insurer over the depreciation endorsement.

Ruben Musikantow testified that the first meeting was about a month after the loss; they also met another time "anywhere from two to three months after that first meeting." At this meeting they were "discussing various figures of settlement and coming to some compromises and agreed figures on various policies, * * * on value and loss, * * * whatever the final settlement [9] was." He stated there was no discussion as to the depreciation endorsement, until after they had received the checks on the fire policy loss. So the broker, Mr. Dann, was going to check, and he (or their adjuster, Mr. Fienk) advised plaintiffs "that the policy [depreciation endorsement] would be paid only after we had gone back into business and replaced the equipment that was destroyed." On the deposition of Ben Musikantow, he was asked if he had any specific plans for resuming manufacturing business such as that carried on by Tamco and he replied, "We have nothing specific now, although it is not out of the realm that we might go back into it. It is nothing specific."

On broker Dann's deposition he stated he recalled a meeting after the fire, attended by the public adjuster, both Musikantows, and Emil Lederer (of the firm which was the general agent of the insurer). He stated that "the substance of the meeting was for the purpose of attempting to secure a settlement, a cash settlement under the policy." The deposition further discloses this testimony:

"Q. Now, is this under the depreciation?

"A. Under the depreciation policy.

"Q. And what was said at the meeting?

"A. Well, again, it is difficult to recall specifically what was said; but I know that the essence of it was that the Musikantows were attempting to induce the Federal Insurance Company to settle the loss for cash without having to abide by the requirement, the policy requirement, that they actually restore the destroyed property. * * * The purpose of the meeting was to employ Mr. Lederer's services to induce the Federal, to bring influence to bear on the Federal to attempt to get them to agree to make a cash settlement. * * * As I recall, he said he would undertake this, that he would attempt do do so."

Later, he testified Mr. Lederer told him that "Federal insisted on invoking policy conditions and were unwilling to offer a cash settlement." He further testified that later the Musikantows asked him "what the replacement of the damaged or destroyed property would be, or the periods of time; they questioned me at various intervals. * * * They asked questions on what the effect would be of subsequent replacement of the property, if they did it at a later date." He also testified that to his knowledge there was never any agreement made to pay on the depreciation loss prior to a rebuilding, repair, or replacement of the property; that he believed that the conversations in respect to the depreciation endorsement were after the payment on the fire policy loss.

While the evidentiary admission resulting from the failure of the original

---

9. Defendants object to the designation by a layman of the use of the word "settlement"—a legal conclusion.

answer to deny the existence of an accord and satisfaction has some probative value, it would seem reasonably evident that there was no overall accord and satisfaction whereby the insurer would pay on the depreciation endorsement prior to actual repair, rebuilding or replacement of the property on the same or another site. The agreement was at most as to the amount of the depreciation found by the agreement of the adjusters, under the depreciation endorsement.

The Court therefore concludes that the condition of the depreciation endorsement that "This policy does not cover: (b) any loss unless and until the damaged or destroyed property is actually repaired, rebuilt or replaced on the same or another site" must be met before liability of the insurer comes about.

*Policy limitation for suit.* The Court believes that the year limitation for suit is inapplicable for either of two reasons: (1) the insurer is estopped to assert it by the general agent's representative's agreement to seek the insurer's consent to a cash payment without fulfillment of the condition,[10] or (2) the fact that the year limitation which appears in the policy is not repeated in the endorsement and because it could be implied that such an omission might be explained by the necessities of the situation—just such as occurred here, i. e., inability to procure a new, satisfactory

site within the year and difficulty in reestablishing a sizeable plant. Furthermore, there appears the time limiting phrase "reasonable time" in the main fire policy, *which limiting phrase does not appear in the depreciation endorsement.* Thus, in the policy in chief, it is provided:

"It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality *within a reasonable time,* on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required." (Italics supplied.)

The "Building—Machinery and Fixtures —Stock Form" portion of the policy provides that the insurance "shall cover the Insured's use interest in Improvements and Betterments to the building. (3) (b) If not repaired or replaced *within a reasonable time* after such loss. * * * (3) (a) If repaired or replaced at the expense of the Insured within *a reasonable time after such loss,* the actual cash value of the damaged or destroyed Improvements and Betterments." (Italics supplied.)

It is therefore evident that the insurer in drafting the policy advisedly used the limiting phrase "within a reasonable

---

10. It is noteworthy that the assignment, of which insurer had direct notice, occurred but a couple of days less than one year after the loss, giving insurer notice that insured was not dropping accrued rights. Yet the insurer took no steps to acquaint insured with any reason for not acting on the notice of assignment. The assignment was probably propitiated by the imminence of corporate dissolution which followed in a couple of months. Further, the Musikantows' affidavit states they " * * * were advised that they would only be paid the depreciation insurance at the time they reentered * * * business. It was further explained to them that *the one year time limitation would only apply subsequent to the date that they repaired, rebuilt or replaced their plant."* This statement the insurer challenges because the affiants fail to state the names of the persons who so told them and their deposition shows they had discussions only with their own agents, Dann and Fienk, neither of whom testified to any discussion as to the one-year limitation period. In support of the assertion that Dann was *plaintiffs'* agent, being broker to procure the depreciation endorsement, defendant cites France v. Citizens Casualty Company, 400 Ill. 55, 79 N.E.2d 28 (1948). However, that decision intimates *a broker may become agent of the insurer or for both the insured and insurer.* (Italics supplied.)

time" when it felt the need therefor. Its failure similarly to limit the coverage of the depreciation endorsement is therefore subject to the construction that its omission was intentional. The five-year premium for this depreciation coverage was substantial—$866.55—more than that on the $17,000 coverage for fire insurance on the same property.

■ Inasmuch as the Court has concluded that plaintiffs have a right to recover under the depreciation endorsement upon their compliance with its condition of replacement,[11] it remains to be determined within what time that condition precedent must be met. As the Court sees it, there are the alternatives of "reasonable time" as set forth in the "option" provision quoted above, or the year period of the policy provision for the bringing of suit upon a loss. What is a "reasonable time" would depend upon all the circumstances and conditions.[12] While much time has already elapsed since the fire in July, 1955, and the bringing of the suit (removed to this Court, May 23, 1960), it is the Court's conclusion that the period of a year finds justification in view of the insurer's continued denial of liability, the principal policy's original designation of a year's period, and the probable difficulty the insured's assignees will have in the hiring of personnel and the refurnishing of the plant should they decide to conform to the condition. In justification for this liberal allowance of time it might be added that there is no evidence that defendant has been "injured by this delay."[13]

The Court concludes that plaintiffs are entitled to declaratory relief, finding in them the right to recover under the depreciation endorsement for the agreed depreciation loss when they have complied with the condition of the endorsement upon the rebuilding or replacement of the damaged or destroyed property. This opinion shall be considered as the findings of the Court. Plaintiffs shall prepare and submit to the Court an appropriate decree in ten days.

---

11. Evidently at this time there could be no "repair or rebuilding" of the damaged machinery, etc.

12. Illinois Central R.R. Co. v. Mulberry Hill Coal Co., 238 U.S. 275, 279, 35 S.Ct.

760, 59 L.Ed. 1306 (1915); Cohen v. Southern Railway Company, 358 Ill. 532, 193 N.E. 480 (1934).

13. Hubshman v. Louis Keer Shoe Co., 129 F.2d 137 (7th Cir. 1942).